WILLIAM B. ROMANS *v.* STATE OF MARYLAND
EDNA M. HORAN *v.* SAME

[Nos. 2, 3, October Term, 1940.]

*Decided November 14th, 1940.*

The causes were argued before BOND, C. J., PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Eldridge Hood Young,* with whom were *Charles F. Rheb* and *Young & Crothers* on the brief, for the appellant.

*Robert E. Clapp, Assistant Attorney General,* with whom were *William C. Walsh, Attorney General, J. Bernard Wells, State's Attorney for Baltimore City, William H. Maynard, Deputy State's Attorney,* and *Anselm Sodaro, Assistant State's Attorney,* on the brief, for the State.

PARKE, J., delivered the opinion of the Court.

The separate appeals of Wiliam B. Romans and of Edna M. Horan are from the several judgments which imposed sentences upon them after their joint trial and a finding of guilty by the court, sitting as a jury.

The first question for review is the action of the court in overruling the demurrer of Edna M. Horan to the indictment. The demurrer was to the indictment and every one of its five counts. The traverser argues that the counts are duplicitous. If so, the vice would make the counts bad. The State maintains that a single offense is charged in violation of section 30 of article 27 of Code 1939, whereby it is provided: "If any person shall corruptly or by threats or force endeavor to influence, intimidate or impede any juror, witness or officer in any court of this State in the discharge of his duty, or shall corruptly or by threats or force obstruct or impede, or endeavor to obstruct or impede, the due administration of justice therein, he shall be liable to be prosecuted

therefor by indictment, and shall on conviction thereof be punished by fine not exceding five hundred dollars, or by imprisonment not exceeding three months, or both, according to the nature and aggravation of the offense."

The statute is in aid and definition of a class of those criminal acts which are known to the common law as obstructions of justice. The words of the statute are general and embrace in comprehensive terms various forms of obstruction. Thus the particular acts are not specified but, whatever they may be, if the acts be corrupt, or be threats or force, used in an attempt to influence, intimidate, or impede any juror, witness or officer in any court of the state in the discharge of his duty, there is an obstruction of justice. Likewise, if by acts of similar quality and nature the due administration of justice in any court shall either be impeded or obstructed or be so attempted, there is an obstruction of justice. Furthermore, it is quite clear that the corrupt act, or one of threat or force, employed to influence or intimidate or impede any such juror, witness, or officer in the discharge of his duty in a court, must necessarily be, also, an endeavor to obstruct or impede in such court the due administration of justice. The fact that the act denounced is at once an attempt within the meaning of both clauses of the section of the statute forbidding certain obstructions to justice does not make the forbidden act two offences against the sovereign State. Where in this statute the acts particularly denounced are of necessity wholly within the limits of the acts generally denounced, two offences do not arise from the same act, although it may be dealt with here under alternate provisions as an obstruction to justice.

With this construction of the statute in mind, the indictment will next be examined with reference to its form and content.

After a due and particular recital of the pendency in the Criminal Court of Baltimore of an indictment for a criminal abortion, the imminency of the trial of the accused, and that one Helen Shray was a witness for the

State in that prosecution, the indictment charged in apt terms that the traversers, with full knowledge of these facts, unlawfully and corruptly did attempt, in the first count, did conspire with each other, in the second, and with each other and with certain other persons to the jurors unknown, in the third, to obstruct and impede the due administration of justice in said court in said case by corruptly attempting and endeavoring "to influence a certain witness, to wit, Helen Shray, in the discharge of her duty as such witness in said cause, in said court, by attempting and endeavoring to influence the said witness, to wit, the said Helen Shray, to leave the City of Baltimore, and to remain away from the City of Baltimore until after the trial of the said cause in said court."

The fourth count of the indictment charges a conspiracy of the traversers, and the fifth count one of the traversers and certain other persons to the jurors unknown, and both in the manner of the second and third counts, with the difference that the last two counts do not contain the accusation of unlawfully confederating to obstruct and impede the due administration of justice by endeavoring to influence the witness to leave the jurisdiction of the court, and remain away, but directly charge the unlawful conspiracy to be "to influence, intimidate and impede" the witness Shray in the discharge of her duty as witness by endeavoring to influence the said witness to depart and not to return until after the trial of the case.

The first count concludes with the declaration that the charge is "contrary to the form of the Act of Assembly in such case made and provided and against the peace, government and dignity of the State" while the other four counts do not state that the crime is against the statutory law. If the prosecution is pursuant to the statute, it is not necessary now so to aver in order to make the statute applicable. Code 1939, art. 27, sec. 650. Whether considered in respect of the statute or of the common law, the counts of the indictment are good, unless bad because of duplicity. See 1 *Bishop on Crim-*

*inal Law,* (9th Ed.) sec. 468; 1 *Bishop's New Criminal Procedure,* sec. 897; *Bishop's Directions and Forms,* sec. 852; 13 *Encyc. of Forms of Pl. & Pr.* pp. 336-340; *Comm. v. Reynolds,* 14 Gray, (Mass) 87; *State v. Holt,* 84 Me. 509, 24 A. 951; *State v. Ames,* 64 Me. 386.

A count is double if it charges the traverser with two or more offences. It is urged here that the counts at bar have this vice. The court does not agree with this contention. Every one of the several counts is a statement of the offence, followed by the particulars of the offence in plain and unambiguous language, so as to give, without repugnancy, the accused person reasonable information of the nature of a single charge. More than this is not here necessary. The circumstance that the offence stated may come within both the particular and general terms of the denunciation of a criminal statute does not split the offence into separate offences. On this record no count is repugnant in its statement, as plainly but a single offence is charged. See *Foxwell v. State,* 146 Md. 90, 92, 125 A. 893; *Mohler v. State,* 120 Md. 325, 327, 328, 87 A. 67; *Jackson v. State* 176 Md. 399, 401, 402, 5 A. 2nd 282; 2 *Archbold's Criminal Practice and Pleading,* *95, *96; *Comm. v. Tuck,* 20 Pick., (Mass.) 356; *Rex v. Fuller,* 1 B. & P. 181, 187, 126 Eng. Reprint, 847, 851; *Hochheimer's Crim. Law,* (2nd Ed.) sec. 403; 2 *Bishop on Criminal Law,* (9th Ed.) sec. 1012a.

The several counts of the indictment designated the accused as "William B. Romans and Isabelle Romans otherwise called Dolly Horan otherwise called Mrs. Warfield otherwise called Edna M. Horan, late of" Baltimore City.

The demurrer mentioned was filed on November 29th, 1939, in the name of "Dolly Horan (referred to by the State in the indictment as Dolly Horan, alias Mrs. Warfield, alias Edna M. Horan)" by her attorney, and overruled on the same day. A bench warrant had been previously issued on the presentment for the arrest of Isabella Romans, and a person by that name was arrested and gave bail to answer the charge. No *alias* appears in

this first writ, but after the indictment was found a war-rant of arrest was issued for "Isabelle Romans, *alias* Dolly Horan *alias* Mrs. Warfield *alias* Edna M. Horan." Edna M. Horan, one of the traversers, was arrested under this writ and gave bail. In her demurrer Edna M. Horan admitted that she was charged by the indictment with the offence, but stated that identity of the accused was unknown because "Isabelle Romans and Dolly Horan, two separate individuals, have been charged with the same offence." She is in error in this statement, as the person accused with William B. Romans is but one woman, who is designated variously as "Isabelle Romans otherwise called Dolly Horan, otherwise called Mrs. Warfield otherwise called Edna M. Horan, late of said City" of Baltimore.

The accused woman is further identified by the indictment as the woman who acted with the other accused, Wiliam B. Romans, in the commission of the crime charged. The two in combination endeavored to induce the prosecuting witness, Helen Shray, to leave the jurisdiction of the court and to remain away until after the trial of one Albert E. MacCrow and William W. Wayne, who were about to be tried for a criminal abortion alleged to have been committed upon the witness. These circumstances eliminated every woman except the single one who was charged with participation in the crime. And the witnesses whose names are endorsed on the back of the indictment designated the woman further by giving the various names by which she would be identified. Thus all that remained for complete identification was to produce the woman who fulfilled the given description.

The woman arrested, who is called Isabelle Roman, had a similar name with the woman charged, but no connection with the commission of the offence, and the State properly discharged her, as was clearly a duty. The second woman arrested was held as being the woman accused. She admittedly is known as Edna M. Horan, which corresponded with one of the names by which the

accused woman of the indictment is known; and the State undertook to establish her complete identification by proof that she, with William B. Romans, committed the crime charged.

On motion of the State the court permitted the counts of the indictment to be amended by striking therefrom the words "Isabelle Romans otherwise called," so that the designation of the accused in every count was "William B. Romans and Dolly Horan otherwise called Mrs. Warfield otherwise called Edna M. Horan, late of said City." The traversers objected to this amendment, which was made before the demurrers. The court overruled the objection to this amendment and the traversers excepted. The demurrers were overruled and the defendants pleaded not guilty to the indictments, and the case went to trial before the court, sitting as a jury. The defendants were found guilty on the first, second and fourth counts of the indictment.

A motion for a new trial was made, and thereupon the accused filed successively a number of motions which were all denied, as was the motion for a new trial. The court agrees with the disposition made of the motions and finds no occasion to discuss but two further questions. The first is the power of the court to permit the indictment to be amended by striking out one of the names under which Edna M. Horan was indicted. The second concerns rulings on the admissibility of testimony.

The defendant Horan entered no plea in abatement, nor did she make a timely motion to quash the indictment on the ground that she was not the person named, but she pleaded not guilty and elected to be tried before the court, without a jury, and was found guilty. She, therefore, must be held to be the person named in the indictment. 1 *Bishop on Crim. Proc.*, secs. 677, 678; 1 *Chitty on Criminal Law*, *202.

She admits, moreover, that Edna M. Horan is her name. In reference to persons, a name is the designation or appellation which is used to distinguish one person from another. Since the identity is the essential thing,

if that is certain a variance in the name is often immaterial. *Comm. v. Terry,* 114 Mass. 263. If there is no statute to the contrary, a person may adopt any name by which he may become known, and by which he may transact business and execute contracts and sue or be sued. *William Gilligan Co. v. Casey,* 205 Mass. 26, 91 N. E. 124; *Smith v. U. S. Casualty Co.,* 197 N. Y. 420, 90 N. E. 947; *Davies v. Lowndes,* 1 Bing. N. Cas. 597, 131 Eng. Reprint, 147. And this without regard to his true name. Hence, if a person adopt or assume a name whereby he becomes known, so that the adopted or assumed name is sufficient for his identification, he may be prosecuted in his adopted or assumed name. On principle there can be no question of this doctrine. The crime is individual, and its prosecution is personal. The name is only material for its evidentiary value, to make certain the particular person charged with the offence. 1 *Bishop on Crim. Proc.,* 686, 681; 1 *Bishop on Directions and Forms,* secs. 74-77.

As remarked by Bishop in his work on *Criminal Procedure:* "If it is uncertain which one of two or more names will appear in the evidence as the defendant's, the method is to give both or all, connected by an *alias dictus;* as John Richardson, late of etc., laborer, otherwise called John Baldwin, late of etc. Thereupon proof of one will sustain the allegation." 1 *Bishop on Crim. Proc.* sec. 681; 2 *Chitty on Criminal Law,* *2.

Since the traverser admitted that her true name is Edna M. Horan, and that was the proof, she was not prejudiced in any way by the amendment; and the names "Isabelle Romans," "Dolly Horan" and "Mrs. Warfield" were surplusage. The amendment merely struck out one of her aliases. In the course of criminal conduct, fictitious names are frequently assumed. the various names given the defendant in the indictment are explicable on the proof. The codefendant William B. Romans assumed the name of "Warfield" in one phase of the transaction, and introduced Edna M. Horan, who was also called "Dolly Horan," as his wife. Thus she be-

came "Mrs. Warfield" before Romans' real name was known and later was given the other surname when his real name was discovered. These circumstances go far toward explaining the use of two or more *alias dictus* names in the indictment.

No matter how considered, the amendment made was the elimination of surplusage without any change in identity being involved, and plainly within that provision of law which prohibits the quashing of an indictment and the reversal of any judgment upon an indictment for misdemeanor or felony "by reason of any mere defect or imperfection in matters of form which shall not tend to the prejudice of the defendant." Code 1939, art. 27, sec. 649.

The elision of an incorrect appellation from a group of otherwise correct appellations of the person accused, which fully identify this person, is certainly a mere matter of form and not an amendment of substance. See *Howes v. State,* 141 Md. 532, 545, 119 A. 297; *Negro Hammond v. State,* 14 Md. 135, 148; *Hill v. State,* 143 Md. 358, 361, 122 A. 251; *Hawthorn v. State,* 56 Md. 530; and Code 1939, art. 27, sec. 646; *Dodge v. United States,* 258 Fed. 300; *Comm. v. Snow,* 269 Mass. 598, 169 N. E. 542.

The first and second exceptions are to the rulings of the court admitting in evidence two papers found on the person of Romans at the police station, where he had been taken after his arrest on the day of October 11th, 1938. The objection urged to the introduction of these papers as testimony against Romans alone is that they were obtained by a search of the person of the accused while he is claimed to have been unlawfully detained. Negotiations had been in course for some time between Romans and the grandmother of Helen Shray, with Frank Shray, the brother of Helen Shray, as the intermediary, for the purpose of having Helen Shray, the prosecuting witness, go away and remain out of the jurisdiction of the court until after the trial of the alleged abortionist. The young woman informed the police,

who did not know, nor did Shray, nor the grandmother, the identity of Romans, who had assumed the false name of "Warfield." In order to catch him, the police officials arranged with Shray for information in advance if he should meet Romans at an appointed place and hour with the purpose of arranging with Romans for the departure of the prosecutrix. Shray carried out the plan and notified the police captain, who was in charge of the detection of the person who was endeavoring to get the witness away, of the meeting for this unlawful object. An officer was detailed to be near the place in order to detect and arrest the man. The officer saw Shray meet Romans at the appointed hour and place in furtherance of the plan for the disappearance of the prosecuting witness. Shray gave a signal to the officer that the man had arrived. Romans drove away to pick up Shray so as not to attract notice. The officer followed in pursuit, and overtook and arrested Romans and took him to the station, where he was searched and the documents found.

It is asserted that, as Romans was arrested without a warrant, the arrest was unlawful, since the offence was a misdemeanor, and that any papers taken from him at the police station, while in custody under this arrest, were seized in an unlawful search and therefore were inadmissible in evidence. Code 1939, art. 35, sec. 5.

If, however, the arrest be lawful, the search was authorized, and the incriminatory papers found were admissible. The general rule is that an officer of the law may not arrest a person for a misdemeanor without a warrant, but, on principle and authority, if an officer of the law detects a person committing a misdemeanor or engaged in its attempt he should do something to prevent it or, failing in this, should bring him to justice. The power is undoubted if the misdemeanor is being committed or attempted in his presence. The possession of such an authority is amply justified on plain grounds of public policy. The broad principle that it is for the common good that all offenders should be arrested applies to misdemeanors, and particularly if the offence be

*malum in se.* Thus it is undoubted that committing an offence in the presence of the public officer embraces not only what is seen, but, also, what is heard or is perceived by any other sense. In this particular case the arrest was made not merely upon information of a third party, but the information was obtained from the prosecuting witness, who revealed that an unknown person was endeavoring to obstruct justice by having her to go away so that she would not be present to testify for the State against the accused. The police officers had the further information that the brother was being used as the intermediary between the witness and the unknown, and that meetings were being had for the criminal purpose mentioned. In order to assure the detection and arrest of the offender, the police officers arranged to be nearby when one of the meetings was held. It was at one of these meetings that the officer saw the meeting of the accused and the brother at the time and place of their appointment for the furtherance of the criminal object described, and, after the identification by the brother, immediately arrested the accused in the course of his criminal act, *in flagrante delicto.*

Under the circumstances, the arrest without warrant was lawful. The law is not so impotent and impractical as to hold that the facts in this record do not show a crime in the course of commission in the presence of the policeman. See *Callahan v. State,* 163 Md. 298, 301, 162 A. 856; *Heyward v. State,* 161 Md. 685, 692, 158 A. 897; *Mitchell v. Lemon,* 34 Md. 176, 181; and *Roddy v. Finnegan,* 43 Md. 490, 504, 505.

Finding no reversible error, the judgments will be affirmed.

> *Judgments in Nos. 2 and 3, October Term, 1940, affirmed with costs.*