## ALLEN *v.* STATE

[No. 339, September Term, 1961.]

*Decided July 6, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and SYBERT, JJ.

*Milton B. Allen,* with whom were *W. Emerson Brown, Jr.,* and *George L. Russell, Jr.,* on the brief, for the appellant.

*Russell R. Reno, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Harrison M. Robertson, Jr., Assistant Attorney General, Saul A. Harris, State's Attorney for Baltimore City,* and *Abraham L. Adler, Assistant State's Attorney,* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The appellant was convicted in the Criminal Court of Baltimore of violating the narcotics law, and, after sentence, has appealed.

The only question involved is whether the heroin admitted, over objection, into evidence by the trial court was obtained by the police officer as the result of an unlawful arrest and seizure.

On September 6, 1961, Officer Marr noticed an automobile parked in the middle of Miliman Street near that street's intersection with Caroline Street. The officer approached the car for a routine "automobile investigation check." He asked the appellant, who was sitting in the driver's seat, to produce his operator's license and registration card. The appellant was nervous, and "was acting suspicious." He said, "What is wrong? What is wrong?" The officer told him he wanted to see his license and registration card. At this point, the officer observed that the appellant had a white cellophane package containing a white powder, which he handed to his wife, who was sitting beside him in the automobile. The officer had seen narcotics before, and he had seen them packaged in the same manner as the powder handed by the appellant to his wife. (In the jargon of the "profession," these packages of narcotics are called "decks.") The officer asked the wife what she had. She replied that she had nothing. The officer told her to give him the package. She placed the package, together with a kleenex and match box, in the cupped palms of both hands so as to conceal them. The officer asked her to give him what was in her hands. She took the package and threw it on the seat beside her husband. The officer opened the left front door of the car, and told the appellant to "step out." The appellant stepped out, and on the front seat close to where he had been seated was the cellophane package with a white powder in it, which the officer picked up and placed in his pocket. The officer then arrested the appellant, who turned to his wife and said: "You dumb goddamned woman." The appellant admitted to another police officer that he had purchased the heroin just before the arresting officer approached his car.

The lawfulness of appellant's arrest (and the proper admittance of the heroin into evidence as an incident thereto) depends upon whether the facts and circumstances within the officer's knowledge were sufficient in themselves to warrant a

man of reasonable caution in the belief that an offense was being committed in his presence. *Price v. State,* 227 Md. 28, 175 A. 2d 11; *Brinegar v. United States,* 338 U. S. 160 (a felony case). For it is well established that a peace officer may arrest without a warrant for a misdemeanor committed in his presence or view. *Callahan v. State,* 163 Md. 298, 162 A. 856, *Walker v. State,* 195 Md. 412, 73 A. 2d 508; *Griffin v. State,* 200 Md. 569, 92 A. 2d 743, and cases therein cited. Stated a little differently, this Court said in *Davids v. State,* 208 Md. 377, 384, 118 A. 2d 636:

> "It is equally clear, however, that an officer without a warrant has no authority to arrest any person for a misdemeanor, not committed in his presence or view, upon mere suspicion or belief that he is guilty. An officer without a warrant should not make an arrest for a misdemeanor unless his judgment [that a crime is being committed in his presence] is based upon personal knowledge acquired at the time through his senses or inferences properly drawn from the testimony of his senses, and the circumstances are such that they would justify a person of ordinary prudence in believing that the suspected person is committing a misdemeanor."

See also *Matthews v. State,* 228 Md. 401, 179 A. 2d 892, and *Silverstein v. State,* 176 Md. 533, 6 A. 2d 465, and the cases therein cited.

In the instant case, the evidence was sufficient, we think, to establish that a misdemeanor was being committed in the officer's presence and view. It is uncontroverted that the officer had a right to approach the automobile parked in the middle of the street, and request the person sitting in the driver's seat to produce his permit and registration card. Before they were produced, the officer noticed that the appellant was nervous and acting suspiciously. He also observed that the appellant had the cellophane package containing a white powder. He had seen narcotics before, packaged in the same way as the powder handed to his wife by the appellant. It is well established that an officer may view facts in the light of

his experience, in determining whether a violation of the law is being carried on at a particular time. *Allen v. State,* 178 Md. 269, 13 A. 2d 352; *Foreman v. State,* 182 Md. 415, 35 A. 2d 171. In response to an inquiry of the wife as to what she had, she replied, "nothing," then concealed the package in her cupped hands, and, when requested by the officer to give him what she had in her hands, she threw the package on the seat of the car. We think these facts, which were based upon the officer's personal knowledge and acquired through his senses of seeing and hearing, were sufficient to warrant and justify him, as a person of ordinary prudence and intelligence in honestly and sincerely believing that the appellant was committing a misdemeanor in the officer's presence and view. Much is made of the fact that the white powder could have been any one of a great number of perfectly legitimate substances, a fact which is, of course, true. But it would impose too great a burden upon the State if we hold a chemical analysis is required in this class of cases in establishing probable cause. It is not practical for each peace officer to be accompanied by a chemist.

The appellant relies heavily upon *Walker v. State, supra,* wherein the testimony showed that police officers who after pushing Walker's stalled automobile to the side of the road, saw tightly wrapped paper bags in a small pasteboard box. The box was open and the bags exposed, but the officers could not see what was in them. The bags were opened by the officers, and they contained money and number slips. One officer testified it was customary for money and number slips to be collected around the time of day of the arrest, and that it was usual and customary to put money and number slips into paper bags, wrap them tightly, and deposit the same in a little pasteboard box. This Court reversed a finding of guilt in the lower court, upon the ground that probable cause that a crime is being committed in the officers' presence cannot be based solely on the basis of the knowledge of the characteristics of gamblers gained by the officers' experience. The Court stated: "The cases show that there were other pertinent facts which, when viewed by the officers in the light of their experience, furnished reasonable grounds to believe that there

was a violation of the law at a particular locality." The differences between *Walker* and the case at bar are apparent. Among them are the facts that the powder could be, and was, plainly seen, the nervous condition of the appellant and unusual and suspicious conduct of the appellant and his wife when the officer inquired about the cellophane package.

We think the case at bar resembles *Silverstein v. State, supra,* more than it does *Walker.* In *Silverstein,* a detail of policemen went to a grocery store to investigate possible violations of the gambling laws. The store was conducted in one room on the first floor of a building. A long counter extended along the length of the inside wall of the room and a short counter was across the room at the rear. When the officer entered the store, he found eight to ten persons there. The proprietor (the traverser) was standing behind the long counter waiting upon a customer. His clerk was behind the short counter at the rear of the store. In front of this counter was a person by the name of Adams. As the officer walked toward the clerk, he observed he was bending forward and writing in a book on the counter. The proprietor asked the officer what he wanted; and the officer replied that he wanted to write a number. The traverser replied that he did not write numbers, and returned to his place at the long counter. A short time thereafter, the officer saw someone signal the traverser from the doorway. The Court held: "All of these facts and circumstances were observed by the officer, and were of such a nature as would justify a careful and prudent person in the belief that a crime against gambling [laws] * * * had been committed in his presence or view by the proprietor and his clerk, and that it was his duty to make their arrest without a warrant."

Holding as we do that the appellant's arrest was lawful and that the heroin was rightfully taken by the officer as an incident to the arrest, there was no error in admitting the heroin into evidence.

*Judgment affirmed.*