## ROBINSON *v.* STATE

[No. 325, September Term, 1961.]

504

*Decided October 19, 1962.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

The cause was reargued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Alan H. Murrell,* for appellant.

*Harrison M. Robertson, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Saul A. Harris, State's Attorney, William J. O'Donnell, State's Attorney on Supplemental Brief,* and *Charles E. Moylan, Jr., Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The defendant, Robinson, was indicted separately (a) for

several substantive offenses under the lottery laws and (b) for conspiracy to violate these laws. Under the substantive offense indictment he was found not guilty on a charge of selling lottery tickets, but he was found guilty of keeping a "place"— an automobile [1]—for the sale of lottery tickets, of permitting an automobile to be used as a place [1] for such sale, of possession of lottery tickets and of possession of lottery paraphernalia. He was also charged and found guilty as a second offender on the last two charges. The conspiracy indictment, on which he was also found guilty, charged him with conspiracy with one Charles George Vain, and other persons unknown, to violate the lottery laws. He was tried under both indictments together and was sentenced to five years' imprisonment under the first indictment and to one year under the second, the sentences to run concurrently. He appeals. By the direction of this Court the case has been reargued as to matters pertaining mainly to the conspiracy charge.

Under the first indictment, the question is whether the arrest of the defendant and the subsequent search of his automobile were lawful. Under the second indictment, the defendant claims that the evidence was insufficient to warrant his conviction (a) because of the so called "concert of action rule" (sometimes known as "Wharton's rule"), and (b) because (even if the agreement of a writer and player could constitute a conspiracy), necessary corroboration of the testimony of accomplices was lacking.

There was evidence showing the following: A plainclothes police officer went to a gasoline station in Baltimore City operated by Charles G. Vain at about 9:10 A.M. on October 18, 1960, and asked Vain if he would accept numbers play that day. Vain declined to do so, but said that a man who worked around the station and drove a truck would. The officer left and informed his superior, a police sergeant, of the conversation. The sergeant, the plainclothes officer and four other

---

1. Cf. *Moore v. State*, 199 Md. 676, 87 A. 2d 577, where a conviction on a charge of permitting an automobile to be used for the sale of lottery tickets was upheld. Cf. also *Curley v. State*, 215 Md. 382, 389-90, 137 A. 2d 640.

detective officers then went to the station, saw some lottery numbers on a piece of cardboard and arrested Vain. Vain told them he was a player, not a writer, that he played numbers with Robinson, the defendant, and that Robinson came to the station several times a week and picked up his numbers. He said that he had a way of contacting Robinson by telephone. Vain then tried in the presence of the officers to call Robinson by telephone and was told by whoever answered the telephone that he was out. The sergeant and three of the officers left, but two officers, Tracey and Todd, remained at the station with Vain. They and Vain made out some fictitious lottery numbers to be used by Vain to trap Robinson, if he should appear.

Robinson soon drove up in his car, Vain went out to the pumps to service the car and the two officers hid in the men's toilet. Robinson and Vain came into the station office together and went to Vain's desk, which was in front of the door to the toilet and a few feet from it. The door was open a crack and the officers saw and heard what then happened. Robinson asked if anyone was in the toilet and Vain told him it was occupied. Vain said he would get the money he owed Robinson from the last week and asked how much it was. Robinson replied that it was $69.00 and said he would get it the next week. Vain then offered Robinson the prepared numbers and $7.00 to pay for playing them. Robinson took the paper and the money for an instant, glanced at them, and either threw them on the desk or handed them back, saying either "Charlie, I don't take numbers on the street," or "I told you I never take that stuff in the street." At this point two strangers entered the filling station, Robinson ran out, got in his car and drove off rapidly. The police officers ran out after him, one of them got in his own car and set off in pursuit of Robinson and caught him after a chase of about a mile through city traffic. The officer then arrested the defendant; and after the defendant had parked and locked his car, the officer took him back to the service station where the sergeant and two other officers joined them.

The sergeant told the defendant he was under arrest for

lottery. He said that he did not have a warrant for his arrest and asked permission to search the defendant's car. The defendant first gave and later retracted such permission before they had even gone to the car. Robinson, to avoid having it towed in at his expense, agreed to and did drive it, with police officers in the car with him and others following, to the Western Police Station. The officers made two unsuccessful attempts to take the defendant's keys and unlock the glove compartment. They then took him into the police station, made him take everything out of his pockets, took his car keys, and used them to unlock the glove compartment. In it they found "a considerable amount of alleged lottery" (to quote from the appellant's statement of facts, which was accepted by the State). The defendant at no time confessed guilt, but on the contrary denied it.

The first question is whether the arrest of the defendant was lawful. It is settled in this State that a peace officer may arrest without a warrant a person who commits a misdemeanor in his presence. See *Silverstein v. State,* 176 Md. 533, 6 A. 2d 465; *Wanzer v. State,* 202 Md. 601, 609, 97 A. 2d 914; *Davids v. State,* 208 Md. 377, 118 A. 2d 636; and *Childress v. State,* 227 Md. 41, 43, 175 A. 2d 18; to cite only a few of the cases so holding. As is stated in *Wanzer,* "[t]he term 'presence' is a word of art, denoting that * * * the commission of a misdemeanor is perceptible to the officer's senses, whether they be visual, auditory or olfactory." And in *Davids v. State, supra,* 208 Md. at 382-83, this court said: "It is stated in general terms that a crime is committed in the presence of an officer where his senses afford him knowledge that such is the fact. * * * Where some evidence of the commission of a misdemeanor reaches an officer through his senses, and it is augmented by other strongly persuasive facts in his possession, all of which is sufficient to convey virtual knowledge to any normal mind that the misdemeanor is then being committed, he may act upon such information as being tantamount to actual knowledge that the misdemeanor is being committed."

In the instant case the officers had reason to believe from what Vain had told them that the defendant had been and still

was in the lottery business and that he used his automobile in the course of it to visit Vain to pick up numbers and to settle or collect for numbers telephoned in by Vain or by others for him. The State argues from this and from what the officers saw and heard at the filling station that the officers had reasonable cause to believe that a misdemeanor was being committed in their presence and hence were entitled to arrest the defendant.

The question immediately arises: what misdemeanor did they perceive being committed in their presence? The State contends that there was enough to justify an arrest without a warrant for each of the substantive offenses of which the defendant was convicted. The State now contends (though we did not understand it to do so at the time of the original argument) that there was enough to justify an arrest without a warrant on the conspiracy charge. It is not disputed that the alleged conspiracy would constitute a misdemeanor.

With regard to the substantive offenses charged, we think it clear as did the trial judge, that there was no sale of lottery at or immediately prior to the arrest. Hence, that charge would not support a claim of a misdemeanor committed in the presence of officers. The other substantive offenses charged, and those of which the defendant was found guilty, involved (a) the use of his automobile for the sale of lottery tickets and (b) possession of lottery tickets and other lottery paraphernalia. As to all of these charges, it is doubtless true that when the defendant drove up to the service station the lottery tickets and other paraphernalia were in the glove compartment of his car. It is equally true that the officers did not and could not see them there, nor was there any statement by the defendant admitting or indicating that they were there. Therefore, insofar as the charges based on possession are concerned, we also think the evidence was insufficient to show the commission of a misdemeanor in the presence of the officers. We further think it was insufficient to show that the automobile was being used or was being permitted to be used in their presence for the sale of lottery. The officers had information to the effect that the defendant used his car in the course of his lottery business in making pay-offs or collections and at times

of picking up numbers, but we do not think that what the officers saw and heard when the defendant came to the filling station on this occasion was enough, even with their prior information, under the test stated in the *Davids* case, to show that the defendant's car was then being used, or was being permitted to be used, in the officers' presence, for the sale of lottery. See also, *Silverstein v. State, supra; Walker v. State,* 195 Md. 412, 73 A. 2d 508; and *Wanzer v. State, supra.* The facts here fall short of those in *Allen v. State,* 229 Md. 253, 182 A. 2d 832, where the arresting officer had actually seen before making the arrest, what, from his experience, he reasonably believed to be heroin in the possession of the defendant. The instant case also differs from *Lane v. State,* 226 Md. 81, 172 A. 2d 400, in that here there was no statutory authority for an arrest upon probable cause for the officers to believe that a misdemeanor was being committed in their presence. In the *Lane* case Federal narcotic agents made an arrest without a warrant, in accordance with a Federal statute authorizing them to make such an arrest where they had reasonable grounds to believe that a violation of the Federal narcotics laws was being committed in their presence. The arrest was held lawful under that statute and the fruits of a search incidental to the arrest were accordingly held admissible in evidence.

With regard to evidence of the offense of conspiracy committed in the presence of the officers, the facts also fall somewhat short, we think, of the facts in *Romans v. State,* 178 Md. 588, 16 A. 2d 642, cert. den. 312 U. S. 695. There the police had been informed of a conspiracy to cause a State's witness to disappear before a trial and had been informed of a meeting to be held between the defendant and an intermediary at which plans were to be perfected. Pursuant to prior arrangement, the arresting officer watched the intermediary at a street corner, saw the defendant drive up to him and speak with him briefly, saw the intermediary walk away a few feet and was told by the latter that the man who had just driven off was the man whom the intermediary was to meet, and that this other man was to return to pick up the intermediary, so as not

to cause suspicion. The officer then took the intermediary with him and pursued, overtook and arrested the defendant. The arrest was held lawful. The officer saw the defendant engaged in an act which he had reasonable ground to believe was in furtherance of a conspiracy to obstruct justice and was in itself an effort to obstruct justice. Cf. *Marron v. United States,* 275 U. S. 192, in which papers seized upon the arrest, without a warrant, of a co-conspirator and co-defendant, were held admissible against the defendant, Marron, where his co-defendant had been engaged in the presence of the arresting officers in an act in furtherance of the conspiracy, which act itself constituted an offense. In the instant case the officers did not see the defendant engaged in an overt act in furtherance of the conspiracy. Whatever his reasons therefor may have been, he postponed accepting a proffered payment on past transactions and rejected new numbers and current payment for them.

Robinson's flight may have been evidence of guilt (*Tasco v. State,* 223 Md. 503, 165 A. 2d 456, cert. den. 365 U. S. 885; *Price v. State,* 227 Md. 28, 175 A. 2d 11) ; but it does not point to evidence of guilt of any particular offense which the officers had reason to believe, from the evidence of any of their senses, had been or was being committed in their presence. An arrest without a warrant for a past misdemeanor not committed in the presence of an officer, which the person arrested has not confessed or admitted, is invalid. *Le Faivre v. State,* 208 Md. 52, at 71 (on reargument), 116 A. 2d 368, 118 A. 2d 639 (on reargument). See also Kauffman, *Law of arrest in Maryland,* 5 Md. L. Rev. 125, 162-66, and cases there cited, particularly *Blager v. State,* 162 Md. 664, 161 A. 1.

We thus conclude that the arrest without a warrant in this case was not lawful, whether its justification is sought to be rested upon information obtained by the officers coupled with what they saw and heard (a) relating to the alleged substantive offenses or (b) relating to the alleged conspiracy.

The State makes no contention that the search of the car was lawful if the arrest was not and has abandoned any claim based upon consent of the defendant, a matter as to which

the trial court decided against the State. Since the arrest was not lawful, neither was the search, and the lottery tickets and paraphernalia found by the search should not have been admitted in evidence, and the conviction on the substantive offense indictment must be reversed.

Before leaving this phase of the case, we may observe that the only basis upon which the State has sought to uphold the conviction under the substantive offense indictment is for offenses committed on the day of the arrest, and not for any offense which may have been committed prior to the date of the arrest but within the period of limitations. We decide the case as it has been presented to us.

When we turn to the conspiracy charge, the case comes before us on a record which is not so complete and explicit as we might wish. Though the indictment is sufficient under *Hurwitz v. State,* 200 Md. 578, 92 A. 2d 575; *McGuire v. State,* 200 Md. 601, 92 A. 2d 582, cert. den. 344 U. S. 928; and *Scarlett v. State,* 201 Md. 310, 93 A. 2d 753, cert. den. 345 U. S. 955; it is not highly informative. The defendant sought further information with regard to the charge of conspiracy through an interrogatory, which the State claimed it was not obligated to answer. As a result of a discussion immediately prior to the trial the State furnished information which apparently satisfied this demand of the defendant. The Assistant State's Attorney said that the State's "position is that the co-conspirators are players and not writers." He then specifically stated that this was true as to Charles G. Vain, the defendant's named co-conspirator (referred to below for brevity as "Vain, Sr.") ; but as to Charles J. Vain (son of Charles G., and referred to below, for brevity, as "Vain, Jr.") he went on to say in part: "We do not stipulate that he is engaged in lottery in any capacity, even as a player"; and as to Hagner, who, like Vain, Jr., was employed at Vain, Sr.'s service station, he said that this man was "[s]imply a witness, not a participant."

As to Hagner, the evidence is that he did not engage in playing numbers. On one occasion, in response to a telephone call from Robinson, he gave the latter a list of numbers which

Vain, Sr. had left in his desk; and on another occasion he received a package of money from Robinson for Vain (apparently a pay-off on a number that "hit"). Vain, Jr., according to his own testimony, gave his father's lists of numbers to Robinson over the telephone on a number of occasions when Vain, Sr. was not at the service station; and Vain, Jr. also played about $6.00 a week himself. There was further testimony to the effect that for a period of about two months prior to the arrest of Robinson, Robinson would call Vain, Sr. by telephone each day and would accept numbers from him and that once or possibly twice a week Robinson would call to make collections or pay-offs, crediting the amount of his purchases of gasoline against amounts owed him by Vain, Sr. All of the testimony relating to the above transactions came from Vain, Sr., Vain, Jr. and Hagner.

It is on this evidence that we take up the defendant's contentions based upon the concert of action rule in conspiracy cases and upon the requirement for corroboration of the testimony of accomplices. This requires consideration of the nature of the agreement constituting the alleged conspiracy and of the parties thereto—as to the latter, specifically the position of Vain, Jr. and that of Hagner.

The indictment, as already noted, is not very informative. The testimony indicates that the original and basic agreement to violate the lottery laws upon which the conspiracy charge rests was an agreement between Robinson and Vain, Sr. that Robinson would write and Vain, Sr. would play numbers. The testimony also shows a course of dealing between Robinson and Vain, Jr. from which it might be inferred that there was a similar agreement between them under which Robinson was to write numbers for Vain, Jr. The State's contention on reargument in this Court is that Vain, Jr. was a co-conspirator and that Hagner was neither a conspirator nor an accomplice. With regard to Vain, Jr. there does not, however, appear to be any evidence to show that the defendant's writings for the father and his writings for the son were pursuant to any single agreement either as an original proposition or as the result of the original agreement between Robinson and Vain, Sr. being extended so as to include Vain, Jr. On the contrary,

there would appear to have been two separate agreements—one to write for Vain, Sr., the other for Vain, Jr.

If there were two separate agreements and if there were only one party on each side—a writer and a player—the conspiracy charge would fall within the concert of action rule. Under that rule (sometimes known as "Wharton's rule"), as stated in the now current edition of Wharton's *Criminal Law and Procedure* (Anderson Ed., 1957) § 89 (differing somewhat from the statement of the rule in the 1932 edition) : "An agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." (p. 191). The rule was thus stated by Mr. Justice Stone in *Gebardi v. United States,* 287 U. S. 112, 122 (which, however, was decided upon a different theory) : "[W]here it is impossible under any circumstances to commit the substantive offense without cooperative action, the preliminary agreement between the same parties to commit the offense is not an indictable conspiracy either at common law [citing cases, including *Shannon and Nugent v. Commonwealth,* 14 Pa. St. 226 (1850), apparently the original authority for Wharton's first statement of the rule], or under the federal statute." See also *United States v. Katz,* 271 U. S. 354, 355; *Pinkerton v. United States,* 328 U. S. 640, 643; *United States v. Zeuli,* 137 F. 2d 845, 846 (C.C.A., 2d, opinion by Learned Hand, C. J.) ; *People v. Purcell,* 26 N. E. 2d 153 (Ill. App.). The rule has also been stated, but not found applicable in *Hurwitz v. State, supra,* 200 Md. at 589-90. See also 11 Am. Jur., *Conspiracy,* § 20; 15 C.J.S., *Conspiracy,* § 47, cases collected in a note in 104 A.L.R. 1430, and *Developments in the Law—Criminal Conspiracy,* 72 Harv. L. Rev. 920, 953-56 (1959). In the article just cited, it is stated (p. 954) : "Briefly, the Wharton rule states that when by definition the intended substantive offense requires a plurality of actors, a conspiracy prosecution cannot be maintained if only the minimum number of parties logically necessary for the commission of the substantive offense agree to commit it. The courts seem to justify this rule on the basis that when

two parties conspire to commit such an offense there is no danger involved beyond that inherent in the offense itself." The article then proceeds to criticize the rule and certain of its applications (one of which was in a case of the giving and receiving of a bribe, *United States v. Dietrich,* 126 F. 664).

The American Law Institute also criticizes Wharton's rule. See *Model Penal Code,* Tentative Draft No. 10 (1960), particularly the Commentary on § 5.04, pp. 172-74. This Section is not substantially changed in the Proposed Official Draft of 1962, and the Commentary in Draft No. 10 is, in effect, incorporated by reference. That Commentary states, *inter alia*: "That an offense inevitably requires concert is no reason to immunize criminal preparation to commit it." The Institute's solution of the problem is thus summarized (pp. 173-74): "The Draft * * * goes no further than to provide that a person who may not be convicted of the substantive offense under the complicity provision may not be convicted of the inchoate crime under the general conspiracy and solicitation sections. On the other hand, the party who would be guilty of the substantive offense if it should be committed, may equally be convicted of soliciting or conspiring for its commission, since the immunity of the other party gives him no defense under Subsection (1)(b)." See §§ 5.04 and 2.06 (6)(a) and (b) of the 1962 Draft and their predecessors in the 10th and 4th Tentative Drafts, respectively. The A.L.I. Drafts, of course, present a proposed statute, and we are dealing with the common law of this State.

*Hurwitz v. State, supra,* considered the concert of action rule at some length. There are well recognized limitations upon that rule which Hurwitz applied. Chief Judge Markell there said (200 Md. at 590): "A sufficient answer to appellant's contention is that the indictment does not charge—and the evidence does not show—as an object of the conspiracy, and the lottery laws do not prohibit, as a substantive offense, any concert of action or plurality of agents which is essential to commission of a substantive offense. Unless by implication the lottery laws prohibit the purchase of a lottery ticket (by prohibition of sale or otherwise) there seems to be no violation of these laws which could not be committed by one

person; this is notably true of possession, the broadest of all such offenses. The indictment does not charge, and the evidence does not show, that any of the conspirators were mere 'players', *i.e.*, purchasers."

In *Hurwitz* the appellant and his co-conspirators were writers, not players of numbers. That is not the situation in the instant case, and the passage quoted carries a rather clear intimation that at least in the case of an agreement between one writer and one player for the writing of numbers the rule would apply, even though only the seller would be guilty of an offense. In such a case concert of action between the writer-seller and the player-buyer appears logically necessary to the commission of the offense.

Where more parties participate in the conspiracy than are logically necessary to the commission of the substantive offense contemplated by the conspiracy, the rule does not apply. *Vannata v. United States,* 289 F. 424 (C.C.A., 2d) ;[2] *State v. Lennon,* 3 N. J. 337, 70 A. 2d 154; *State v. Clemenson,* 123 Iowa 524, 99 N. W. 139; *Old Monastery Co. v. United States,* 147 F. 2d 905 (C.C.A., 4th), cert. den. 326 U. S. 734.

A further limitation upon the rule is that the substantive offense must have been committed. See the *Zeuli* case, cited above. That seems to have been the fact here.

Conversely to the more-parties-than-necessary limitation, as was recognized in *Hurwitz,* the fact that logically action by only one person may be essential to the commission of the offense which is the object of the conspiracy bars the application of the concert of action rule. *Lisansky v. United States,* 31 F. 2d 846 (C.C.A., 4th), cert. den. 279 U. S. 873 (conspiracy to defraud the United States by filing a false partnership income tax return).

On the other hand, the fact that there may be several parties on each "side" of the offense has been said or held not

---

2. A criticism was made in *Vannata* and elsewhere of using a conspiracy charge to increase the penalty over that applicable to the substantive offense. This is no longer permitted under Federal law where the substantive offense is a misdemeanor. Title 18, U.S.C.A. § 371. Nor would it now be permitted under Maryland law. Code (1961 Cum. Supp.), Art. 27, § 38.

to prevent the application of the rule so as to bar a conspiracy charge. *Zeuli v. United States, supra; United States v. Sager,* 49 F. 2d 725 (C.C.A., 2d) ; *United States v. New York Central & H. R.R. Co.,* 146 F. 298 (C.C., S.D., N.Y.).

The concert of action rule has sometimes been supported or the same result has been reached on other grounds than the usual one of there being no greater danger from the same number of participants, which is mentioned in the article on *Criminal Conspiracy* in 72 Harv. L.Rev. above cited. Sometimes it is reached on a theory of merger of offenses or double jeopardy (see 11 Am. Jur., *Conspiracy,* § 20) and sometimes, in the case of statutes manifesting an intent that one party shall not be punished for the substantive offense, a further legislative intent that the same act shall not serve as a basis for a prosecution for conspiracy. See *Gebardi v. United States, supra,* 287 U. S. at 123.

Following the *Hurwitz* case, the concert of action rule was asserted as a defense to a charge of conspiracy to violate the lottery laws in *Rouse v. State,* 202 Md. 481, 97 A. 2d 285, cert. den. 346 U. S. 865, but this defense was abandoned. Judge Hammond there commented (202 Md. at 484) this defense "necessarily * * * would have failed the appellant in view of the over-ruling of similar contentions in *Hurwitz v. State,* [supra] 200 Md. 578, 92 A. 2d 575; *McGuire v. State,* [supra] 200 Md. 601, 92 A. 2d 582; and *Scarlett v. State,* [supra] 201 Md. 310, 93 A. 2d 753." *Rouse,* like *Hurwitz,* involved a conspiracy between several writers. So did *McGuire,* in which one writer "laid off" some of his bets with another writer (the appellant) and so did *Scarlett.* This last case rejected a plea based upon double jeopardy and *res judicata* and held that an acquittal on certain charges of lottery did not bar a subsequent prosecution for conspiracy to violate the lottery laws or prevent the use therein of some of the evidence offered in the earlier substantive offense case. *Rouse,* too, involved and rejected a defense of *res judicata* (under a defense of former jeopardy). None of the cases just cited involved a writer-player conspiracy, as does the instant case.

The rule adopted by the *Model Penal Code* has much to

recommend it as against the concert of action rule and its refinements and limitations or exceptions as they have been developed. However that is only a proposed statute, and the concert of action rule has, we think, been recognized by this Court in the *Hurwitz* case. We do not undertake to depart from it.

We turn then to the status of Vain, Jr. and Hagner and a consideration of the effect of their presence in the case. At this point the State encounters this dilemma: if Vain, Jr. and Hagner were co-conspirators or accomplices, corroboration of their testimony and that of Vain, Sr. would be required in order to sustain the conviction of the defendant (*Wolf v. State,* 143 Md. 489, 122 A. 641; *Lanasa v. State,* 109 Md. 602, 613, 71 A. 1058; *Meyerson v. State,* 181 Md. 105, 112, 28 A. 2d 833; *Watson v. State,* 208 Md. 210, 117 A. 2d 549; *Wright v. State,* 219 Md. 643, 150 A. 2d 733, cert. den. 361 U. S. 851); if they were not, then the only conspirators were the seller-writer, Robinson, and the buyer-player, Vain, Sr., and the conspiracy charge would fail under the concert of action rule above discussed.

Without the evidence seized as a result of the illegal search of the defendant's automobile, we think that the necessary corroboration of the testimony of co-conspirators or accomplices is lacking. Much the same considerations are applicable here as those which led us to conclude that the officers did not have a sufficient basis to arrest the defendant and search his car, and we shall not repeat them.

The State cannot, we think, escape the horns of this dilemma through its contentions that Vain, Jr. was a conspirator and that Hagner was neither a conspirator nor an accomplice. If Vain, Jr. was a party to a conspiracy between Vain, Sr. and Robinson (and this does not appear to have been the State's contention at the trial), the evidence, we think, shows no more than that Vain, Jr., with knowledge of the arrangement between Vain, Sr. and Robinson, telephoned in numbers for Vain, Sr. (His own playing of numbers with Robinson appears, as we have already said, to have been under an arrangement of his own.) If this activity of Vain, Jr. as agent for Vain, Sr. was enough to make him a co-conspirator, we see

no reason why like reasoning, applied to Hagner's lesser activity as agent for Vain, Sr., but with knowledge of the nature of the arrangement between Vain, Sr. and the defendant, would not also make Hagner a party to the conspiracy or at least an accomplice. See *Coleman v. State,* 209 Md. 379, 384-86, 121 A. 2d 254, for a discussion of the meaning of the term "accomplice" and a review of a number of authorities. We think it unnecessary to decide whether Hagner was or was not an accomplice. We think, however, that if Vain, Jr. was one, so was Hagner.

This brings us back to the point that the conviction on the conspiracy charge must be reversed because, if Vain, Jr. and Hagner were conspirators or accomplices, there was not sufficient corroboration of their testimony and that of Vain, Sr., or if they were not parties to the alleged conspiracy, it was not punishable as such under the concert of action rule.

> *Judgments reversed and cases remanded for new trials; the costs of this appeal to be paid by the mayor and city council of Baltimore.*