STANLEY *v.* STATE

[No. 57, September Term, 1962.]

*Decided December 10, 1962.*

The cause was argued before Brune, C. J., and Hammond, Prescott, Horney and Marbury, JJ.

*George L. Russell, Jr.,* for appellant.

*Thomas W. Jamison III, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Saul A. Harris, State's Attorney,* and *Russell J. White, Assistant State's Attorney,* on the brief, for appellee.

Hammond, J., delivered the opinion of the Court.

The defendant, Stanley, was convicted of unlawful possession and control of a narcotic drug, a misdemeanor. He contends that heroin, which was taken from him after an arrest which he says was unlawful, was wrongfully admitted at his trial. His reliance is on the combination of the holding of the Supreme Court in *Mapp v. Ohio,* 367 U. S. 643, 6 L. Ed. 2d 1081, that the proscription of the Fourth Amendment of the Constitution of the United States against the use of evidence obtained by an unreasonable search and seizure is made applicable to the States by the Fourteenth Amendment, and the subsequent decision of this Court in *Belton v. State,* 228 Md. 17. *Belton* held that as a result of *Mapp,* evidence illegally seized is no longer admissible in Maryland courts in narcotics prosecutions despite the provisions of Code (1957), Art. 27, Sec. 299, which except such prosecutions from the prohibitions of the Bouse Act (Code (1957), Art. 35, Sec. 5) in misdemeanor cases.

On September 22, 1961, at about 3:45 a. m., the defendant and two other men were stopped by two uniformed Baltimore City police officers while riding in a 1960 Oldsmobile, bearing Maryland license number AL29-32. The officers got out of the police car, drew their pistols, placed the defendant and the

others under arrest, told them to put their hands on the dashboard, and held them in that position until their sergeant arrived. Then, the defendant and the other occupants were ordered out of the car and were subjected to a search, in the course of which the arresting officers discovered in the right jacket pocket of the defendant a small package wrapped in green paper, the contents of which were later identified as heroin. In a subsequent search at police headquarters, a similar package, the contents of which were also later identified as heroin, was found in the defendant's sock.

Officer Snead, one of the arresting officers, testified that the reason he stopped the vehicle the defendant was driving was that he had received a teletype message on his patrol car radio to stop a vehicle matching the description of the Oldsmobile, with Maryland tags number AL29-32, in which were two colored occupants who were suspected of illegally possessing narcotics, that he had not been informed of and did not know the defendant's name or his description, and that at no time did he see the defendant violate any law.

The instruction to stop the vehicle which the defendant was driving, on which the arresting officers relied in making their arrest, was placed on teletype at approximately 12:30 a. m. September 22, by the Maryland State Police at the request of one Greenfeld, a federal agent who was acting upon information which had been relayed to him in Baltimore by Federal narcotics agents in New York who had had the defendant under surveillance as a result of information passed on to them by a special employee (an informant). The New York agents both testified that they had not observed the defendant violate any law nor had their special employee, who merely had heard that the defendant had narcotics in his possession which he was taking back to Baltimore. Agent Greenfeld testified that based on the information he had received from New York, his evaluation thereof, and a conversation with Captain Carroll of the Baltimore Police Narcotics Squad as to the local narcotics activities of the defendant, he "believed" that the defendant was bringing narcotics to Baltimore.

At the outset of the trial it was stipulated that the arresting officers had neither a search warrant nor an arrest warrant.

There has been no contention, either at the trial or on appeal, that the defendant consented to the search of his person when he was arrested, or at any time thereafter. The State relies on the primary premise that the heroin was properly admitted because it was obtained by means of a search and seizure incident to a lawful arrest, and on an alternative premise that even if the arrest is found to be unlawful and the subsequent search illegal, the search was nevertheless not an "unreasonable" one.

The legality of the arrest and, therefore, of the reasonableness of the search and seizure incident to the arrest, turns on the law of the State in which the arrest was made, absent a controlling federal statute. *United States v. Di Re,* 332 U. S. 581, 589, 92 L. Ed. 210; *Johnson v. United States,* 333 U. S. 10, 15-16, 92 L. Ed. 436; *United States v. Rabinowitz,* 339 U. S. 56, 60, 94 L. Ed. 653. The Supreme Court has said that if the arrest was unlawful nothing that happens thereafter can justify a search as its incident. *Rios v. United States,* 364 U. S. 253, 262-263, 4 L. Ed. 2d 1688. See also *Louisiana v. Walker,* 206 F. Supp. 544, and the following cases in State Courts all decided after *Mapp*: *People v. Moore* (N. Y.), 183 N. E. 2d 225; *People v. Tyler,* 14 Cal. Rptr. 610, 613; *cert. den.* 370 U. S. 905, 8 L. Ed. 2d 401; and *Commonwealth v. Richards* (Pa. Super.), 182 A. 2d 291.

It is established in Maryland that without a warrant a police officer can arrest a person for a misdemeanor only if the crime is committed in his presence. *Robinson v. State,* 229 Md. 503; *Allen v. State,* 229 Md. 253; *Griffin v. State,* 200 Md. 569, and cases therein cited. This statement was explained in *Davids v. State,* 208 Md. 377, 382-383, where the Court said: "a crime is committed in the presence of an officer where his senses afford him knowledge that such is the fact. * * * Where some evidence of the commission of a misdemeanor reaches an officer through his senses, and it is augmented by other strongly persuasive facts in his possession, all of which is sufficient to convey virtual knowledge to any normal mind that the misdemeanor is then being committed, he may act upon such information as being tantamount to actual knowledge that the misdemeanor is being committed." We applied this reasoning in reaching the result in both *Robinson* and *Allen.*

In the instant case it is apparent, indeed conceded, that the defendant did not afford the arresting officers any knowledge that a crime was then being committed. The testimony of all of the officers who at one time or another were in the presence of the defendant during the evening of September 21, and the early morning of September 22, was that at no time did they become aware through their senses that the defendant was committing any illegal act. The Maryland police were led to believe that the defendant was committing a crime by the message they received over their patrol car radio that the defendant was "suspected of carrying narcotics." The State argues that this message was enough to give the arresting officers reasonable cause to believe that a misdemeanor was being committed in their presence by the appellant, and urges us to broaden the right to arrest in misdemeanor cases so that an arrest would be valid if police officers had probable cause to believe a crime has been or is being committed in their presence and to believe the suspect to be the misdemeanant. Assuming, without deciding, that the officers had probable cause in the present case, in no way based on current evidence of their senses, to believe these things, we decline to overrule the long line of cases in this Court holding that such probable cause alone is not enough in misdemeanor cases. If the often anomalous and illogical distinction in Maryland between felonies and misdemeanors is to be changed, the Legislature should give the matter consideration.

We think a search which is illegal—as was the search in the case before us—because it is incident to an unlawful arrest is necessarily an unreasonable search, prohibited by the Fourth Amendment. In *Asner v. State,* 193 Md. 68, 75, Chief Judge Marbury said for the Court: "Prohibitions against unlawful searches and seizures are found not only in the Maryland Constitution, but in the Constitution of the United States, Fourth Amendment * * *," and in *Griffin v. State, supra,* this Court, in interpreting the meaning of "illegal search and seizure," as used in the Bouse Act, held that term to mean "unreasonable search or seizure according to the standard of the common law." See *Cohen v. Norris* (9th Cir.), 300 F. 2d 24, 31 (a suit under the Civil Rights Act against State police officers for

unreasonable search and seizure), where the Court said that "An intrusion by the police in the form of a search and seizure is arbitrary, and therefore 'unreasonable', if not authorized by law." In *Johnson v. United States, supra,* the Supreme Court, in applying the law of the State of Washington as to arrest (which was exactly that of the State of Maryland on the point) said at page 15 of 333 U. S., in rejecting the Government's contention that the search without a warrant was valid because incident to an arrest: "This alleged ground of validity requires examination of the facts to determine whether the arrest itself was lawful. Since it was without warrant, it could be valid only if for a crime committed in the presence of the arresting officer or for a felony of which he had reasonable cause to believe defendant guilty." See also *Rios v. United States, supra.* A similar conclusion was reached in *People v. Moore, supra,* where the New York Court of Appeals held it to be "a violation of defendant's constitutional rights under *Mapp v. Ohio*" to admit evidence obtained from an illegal search and seizure made pursuant to an unlawful arrest. See also *People v. Loria* (N. Y.), 179 N. E. 2d 478.

We find the contentions of the appellant sound and that the trial court therefore erred in admitting into evidence the heroin taken from him.

> *Judgment reversed and case remanded for a new trial, costs to be paid by the Mayor and City Council of Baltimore.*