CHARLES C. NORFOLK, JR. *v.* STATE
OF MARYLAND

[No. 199, September Term, 1967.]

*Decided April 26, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Jack E. Richards* for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Howard L. Cardin, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

Charles Norfolk, Jr., the appellant, complains of a conviction by a jury in the Criminal Court of Baltimore for the offense of

being a rogue and vagabond ("unlawfully was a rogue and vagabond in violation of Article 27, § 490 of the Annotated Code of Md. to wit: having burglary tools in his possession at Light and Hamburg Streets"), on the basis that illegally seized evidence was introduced at his trial. There were several other complaints but we need consider only this one.

Norfolk's arrest was described by two of the three police officers involved in the following language: Officer Richard Henry testified as follows:

"A Well, I was standing on the corner of Williams and Hamburg Street. I was looking west on Hamburg Street and I observed what I took to be men standing alongside of the bar on the south side of Hamburg Street by a window, about twenty-five or thirty feet east of Light Street.

"Q What, if anything, were they doing at that time?

"A I couldn't see. I wasn't close enough to see what they were doing. And this building is the offices of Attorney at Law, Harry I. Kaplan, 1001 Light Street.

"Q That is the address at which you saw them?

"A Yes, sir, alongside of Hamburg Street.

"Q What did you do?

"A I started along Light Street to investigate what they were doing alongside the window there. As I was going west on Hamburg Street, I don't know if they seen me or what it was, but they took off at a fast pace walking.

"Q What do you mean by a 'Fast pace walking'?

"A They just took off walking real fast. It wasn't a run and it wasn't a slow walk. I mean to me, a slow walk is just dragging along, taking their good old time, but this started at a fast pace.

"Q What, if anything, did you do when you saw these men start to leave?

"A I started going on down Hamburg Street towards Light Street to investigate them and, like I say, as I started down, I don't know if they seen me or what, but they took to walking across Light Street at

a fast pace. By this time Car Number 902, manned by Officer Robert Stevens and Edward Johnson, was northbound on Light Street and they observed them and stopped them on the corner—on the northwest corner of Light and Hamburg Street. And I walked down, continued on, and Officers Johnson and Stevens were talking to the two men at that time."

Officer Robert M. Stevens testified as follows:

"Q What, if anything, did you observe at that time on March 15, 1967?

"A We observed the defendant, Charles Norfolk.

MR. CARDIN: For the record, the witness has indicated the defendant, Charles Norfolk, seated at the counsel table.

"A And one Samuel Weaver, who is not present in the court room this afternoon. He emerged from alongside of 1001 Light Street, which is the law office of Harry Kaplan. As we were approaching up the street, these two walked hurriedly across the street into Hamburg Street. As we turned into Hamburg Street, the headlights of the radio car hit right on both of them and Charles Norfolk turned his back as if trying to hide something.

"Q What do you mean by 'Turned his back as if to hide somehting'? Would you be a little more specific?

"A As we were making the turn into the street, I was driving the radio car. They were on the sidewalk, which would be the northwest corner of Light and Hamburg Street. He turned his back away from us as if he was trying to hide something.

"Q What, if anything, did you do?

"A We stopped. We got out. I asked him what they were doing. I got two conflicting stories from them.

"Q You asked them what they were doing?

"A That's right.

"Q What response did you get?

MR. HARRIS: I would object, if Your Honor please.

THE COURT: I will overrule the objection. Were they in custody at that time?

"A Not at that time, no sir.

THE COURT: All right, I will overrule the objection, but I will admit only what Norfolk said, not what the other man said.

"Q Did Norfolk give you a response?

"A He stated they were going to a friend's house to fix electrical fixtures.

THE COURT: A what?

"A Electrical fixtures.

"Q What time was this?

"A Approximately 4:15 a.m. in the morning.

"Q What, if anything, occurred then?

"A That is when Officer Johnson saw this screwdriver protruding from his left coat pocket. They were then placed under arrest for investigation and I called for the cruising patrol and, as was routinely done, they were searched and patted down. That is when the two bags were found on Charles Norfolk and the other bag was found on the other defendant, Samuel Weaver.

"Q Officer Stevens, did there come a time when Officer Henry joined you?

"A That is correct.

"Q When was that in relation to this episode you have just told us about?

"A At about the same time we recovered the screwdriver from his pocket and it was certain information that we received from Officer Henry.

"Q What did Officer Henry tell you?

"A He told us he had been observing him alongside of Harry Kaplan's law office."

\* \* \*

"Q Officer Stevens, on March 15, 1967, at 4:15 a.m., when you met the defendant, Charles Norfolk, had you known him prior to that date?

"A Yes, I did.

"Q Under what circumstances did you know him prior to that date?

"A Prior to that, I had affected an arrest on him for a breaking and entering at 201 East Cross Street, which at the time was Catherine's Confectionary Store.

"Q Did you know the outcome of that case?

"A That is correct. He was found guilty."

The third officer's testimony was substantially the same as Officer Stevens'.

In addition, the record shows that the area where Norfolk was observed by the officers was well lit and no jimmy marks were found on the building he was suspected of attempting to enter.

The State contends the arrest did not occur until after (1) Officer Johnson observed the screwdriver protruding from Norfolk's pocket (2) Officer Henry had informed Officer Stevens, the arresting officer, of his observations and that this coupled with Norfolk's prior criminal record and his unusual explanation of his presence at that hour of the morning, constituted a sufficient basis for the arrest. We do not agree. We think that even a person with a criminal record can carry a screwdriver on a well lit street at 4:15 in the morning without being subject to arrest.

In *Allen v. State,* 229 Md. 253, 255-56, 182 A. 2d 832, 833 the Court of Appeals of Maryland stated as follows:

"The lawfulness of appellant's arrest (and the proper admittance of the heroin into evidence as an incident thereto) depends upon whether the facts and circumstances within the officer's knowledge were sufficient in themselves to warrant a man of reasonable caution in the belief that an offense was being committed in his presence. *Price v. State,* 227 Md. 28, 175 A. 2d 11; *Brinegar v. United States,* 338 U. S. 160 (a felony case). * * * a peace officer may arrest without a warrant for a misdemeanor committed in his presence or view."

We think that this test is not substantially different from that required for a felony except for the requirement that in a misdemeanor case, as here, the offense must be committed in the

officer's presence. The test for a legal felony arrest was stated by the Court of Appeals of Maryland in *Braxton v. State,* 234 Md. 1, 4, 197 A. 2d 841, 843 as follows:

> "* * * the arresting officer, acting as would a reasonably cautious man, must have had grounds (including facts and circumstances within his knowledge or of which he has reasonably reliable information) to believe (a) that a felony had been committed and (b) that the person arrested had committed the felony."

In that case the Court held (also at page 4) that the fact that the trial court found:

> "* * * (a) the police knew of recent burglaries in the neighborhood and were looking for evidence to help bring the perpetrators to justice, (b) the truck was not of the type to be expected in the area (not bearing the name of any firm or company) and took 'evasive action' without lights when followed, and (c) the occupants of the truck ran away * * *."

was not sufficient to furnish probable cause for the arrest. Although the Court found that Braxton had committed an automobile violation which justified his arrest, and although the question of probable cause is dependent upon the facts and circumstances of each individual case, it appears to us that the rationale of Braxton controls our decision here. See also *Edwardsen v. State,* 231 Md. 332, 190 A. 2d 84.

*Judgment reversed and case remanded for a new trial.*