**Commonwealth v. Lowry**

*Robert F. Banks,* Assistant District Attorney, for Commonwealth.

*Jonathan Solomon,* for defendant.

STRANAHAN, P. J., October 3, 1972.—This matter is before the court on an application to suppress evidence and to quash the indictment. The evidence that defendant seeks to suppress is the breathalyzer test, the field sobriety test and any other evidence of an incriminating nature resulting from an illegal

arrest or any evidence that would be the "fruits" of an illegal arrest.

The parties have agreed to stipulate the facts and they are as follows:

1. That on March 11, 1972, at or about the hour of 7:30 p.m., defendant's motor vehicle collided with another vehicle driven by Richard A. Carmichael, on the Grove City-Leesburg Road, Mercer County, Pa., which collision thereby caused minimal damage to defendant's vehicle and minor property damage to the other vehicle but with nr resulting personal injuries.

2. That shortly thereafter, Trooper Fenair, of the Pennsylvania State Police, arrived at the scene.

3. That upon arrival at the scene, Trooper Fenair found defendant alone, sitting behind the wheel of his automobile; neither the engine nor the lights nor any other of the car's mechanisms were on.

4. That after questioning the said Richard A. Carmichael, witness to the accident, the Trooper learned that defendant had been the operator of his motor vehicle.

5. The Trooper then went to defendant's vehicle, at which time defendant was behind the steering wheel. The Trooper requested defendant to produce his operator's license and registration card. At this time, the Trooper detected a strong odor of alcoholic beverages on defendant's breath; that his speech was slurred and that his eyes were bloodshot. Defendant could not find his operator's license and handed three registration cards for the said vehicle to the Trooper. Finally, defendant found his operator's license in his wallet but could not remove it from his wallet, as a consequence of which the Trooper was required to remove it for him.

6. At the time, the Trooper concluded, based upon the facts set forth in the preceding paragraph, that

defendant should be subjected to a field sobriety test, and asked defendant to get out of his vehicle, which he did.

7. When he was out of said vehicle, defendant could not walk heel to toe, could not lean backward with his eyes closed without tipping to one side and had a difficult time picking a coin from the ground. The Trooper then concluded that defendant was under the influence of alcohol and advised defendant that he was being arrested for driving while under the influence of alcohol.

8. That the Trooper arrested defendant without a warrant.

9. Following such arrest, defendant was taken to the P.S.P. Barracks in Mercer, and subjected to a Breathalizer test, with a resultant reading of 0.18 percent.

The first issue raised by defendant was whether or not he was operating a motor vehicle at the time the State Police Officer came upon defendant. It has been agreed that defendant at that time was sitting behind the wheel of his automobile and that neither the engine nor the lights nor any other of the car's mechanisms were in operation.

This court has already disposed of this question in the case of Commonwealth v. Bell, September term, 1971, no. 111, by holding that under these circumstances defendant was not operating his motor vehicle.

The Commonwealth of Pennsylvania agrees that this is so and, therefore, no further time need be consumed in discussing this matter.

The key issue in this case is whether or not there was an unreasonable seizure of the person of defendant, Arthur R. Lowry, in violation of the fourth amendment, when the State Trooper "asked" defendant to get out of his motor vehicle and take a field sobriety

test. This, according to the stipulated facts, was done prior to any arrest being made by the officer.

It seems fairly clear that if Lowry voluntarily got out of the car and voluntarily took the test, then the results of the test would not be inadmissible under the exclusionary rule of the fourth amendment. We suggest that there would be no constitutional prerequisite that the Trooper inform Lowry that he did not have to emerge from the car to take the field test in order for defendant's action in taking the field test be characterized as voluntary. However, we believe that voluntariness can be negated by a sufficient degree of intoxication or by the application of physical force to defendant in order to pull him out of the automobile. As we will later discuss, voluntariness could also be negated by a sufficient show of authority by the police officer in the circumstances of this case.

1. *Was there a "seizure" of the person within the meaning of the fourth amendment?*

In Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, the Supreme Court rejected "the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a 'technical arrest' or a 'full-blown search.' " In Terry, the court went on to say at page 1877:

"It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the stationhouse and prosecution for crime —'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."

In Terry, the court interpreted the "seizure" within the meaning of the fourth amendment as occurring when the police officer physically took hold of the peti-

tioner and patted down the outer surface of his clothing for weapons. Thus, by the facts of the case, Terry did not decide whether a fourth amendment "seizure" could occur when a citizen was stopped by only a show of authority as opposed to the direct application of physical force to the person of the citizen. However, in footnote 16 on page 1879, the Terry court said:

"We thus decide nothing today concerning the constitutional propriety of an investigative 'seizure' upon less than probable cause for purposes of 'detention' and/or interrogation. Obviously, not all personal intercourse between policemen and citizens involved 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

In Davis v. Mississippi, 394 U.S. 721, 89 S. Ct. 1394 (1969), discussed more below, the Supreme Court on page 1397, footnote 6, seemed to carefully distinguish between cases where the police generally question citizens in the course of investigating a crime and request these citizens to answer questions and the case where there is an "investigatory detention" for the purpose of investigating a crime.

In several lower Federal court cases decided since Terry, the courts have appeared to decide that a person can be "seized" within the meaning of the fourth amendment by a mere show of authority without a direct application of physical force. See Gaines v. Craven, 448 F. 2d 1236 (C.A.9, 1971); Carpenter v. Sigler, 419 F. 2d 169 (C.A.8, 1969); and United States v. Harflinger, 436 F. 2d 928 (C.A.8, 1970). However, these cases may also be read, not as deciding there was a reasonable "seizure" of the person, but as merely sanctioning the police practice of requesting citizens

to answer voluntarily questions concerning crimes or suspicious circumstances.

In this case, however, there was more than just routine questioning by the police officer. There was, at the least, a "request" for Lowry to get out of his auto and submit to a field sobriety test. Under the authorities cited above, it seems that even if mere routine questioning is not a "seizure," a request to take a field sobriety test, which necessarily constitutes a show of authority by the police officer, may reasonably be found to constitute a "seizure" as that term is used in the fourth amendment.

2. *Was the seizure of defendant's person "unreasonable" within the meaning of the fourth amendment because it was unlawful under Pennsylvania law?*

The Pennsylvania rule, derived from the common law, appears to be well established that a police officer may arrest for a misdemeanor without a warrant only when the officer has reasonable grounds to believe that a misdemeanor is being committed in his presence: Commonwealth v. Laniewski, 427 Pa. 455 (1967); Commonwealth v. Vassiljev, 218 Pa. Superior Ct. 215 (1971). Act of April 29, 1959, P. L. 58, 75 PS §1214, authorizing State police officers to "arrest on view . . ., any person violating any of the provisions of this act (The Vehicle Code)," has not been interpreted to have changed the common-law rule when the traffic offense involved is a misdemeanor unless the arresting officer observed defendant operating a motor vehicle while under the influence. This court has already held in Commonwealth v. Bell, supra, that a person, in the circumstances of the instant case cannot be said to be operating a motor vehicle. Therefore, the seizure of defendant for the misdemeanor of driving under the influence was illegal under Pennsylvania law,

since defendant did not commit the offense in the arresting officer's presence.

The United States Supreme Court has held that in a criminal prosecution the legality of a warrantless arrest turns on the law of the State in which the arrest was made, in the absence of a controlling Federal statute: United States v. DiRe, 332 U.S. 581, 589, 68 S. Ct. 222 (1948). Assuming that the State police officer in the instant case had probable cause to seize defendant's person for the misdemeanor of driving under the influence, it is our opinion that since the State law controls the legality of an arrest, the seizure of defendant's person was constitutionally unreasonable since the arrest was made without a warrant for a misdemeanor not committed in the arresting State police officer's presence.

In People v. Moore, 11 N.Y. 2d 271, 183 N.E. 2d 225 (1962), defendant was arrested without a warrant for the misdemeanor of possession of policy slips. Defendant asserted on appeal that the policy slips found on his person by the arresting officer were inadmissible at his trial under Mapp v. Ohio, 367 U.S. 643 (1961), because the slips were seized incident to an arrest which was unlawful under State law. The Court of Appeals of New York in a unanimous opinion, held that since the arrest of defendant was illegal under New York law in that the arresting officer did not have probable cause to believe that a misdemeanor was being committed in his presence, the subsequent warrantless search was illegal under New York law. The court then went on to hold that the evidence taken in the search was inadmissible under the Mapp doctrine since the search was unreasonable. Apparently, the court was holding that since the arrest and incident search were unlawful under New York law, the search was unreasonable under the fourth amend-

ment, and that it would be unconstitutional to admit the evidence obtained from a search unlawful under New York State law.

In Stanley v. State, 230 Md. 188, 186 A. 2d, 478 (1962), defendant was arrested without a warrant for the misdemeanor of possessing narcotics. The court assumed that the officers had probable cause to make the arrest for the misdemeanor, but the court held that the offense was not committed in the presence of the arresting officers as required by Maryland law for the warrantless arrest for a misdemeanor. The court then held that the search incident to the unlawful arrest under Maryland law, was unlawful under state law. The court then said at page 481:

"We think a search which is illegal—as was the search in the case before us—because it is incident to an unlawful arrest is necessarily an unreasonable search, prohibited by the Fourth Amendment. In Asner v. State, 193 Md. 68, 75 [65A 2d 881, 884], Chief Judge Marbury said for the Court, Prohibitions against unlawful searches and seizures are found not only in the Maryland Constitution, but in the Constitution of the United States, Fourth Amendment . . .'"

Upon this reasoning, the court ruled that the evidence seized upon the arrest, which was illegal under Maryland law (although, for the sake of argument, not unconstitutional because based upon probable cause) was inadmissible in the State trial because of the exclusionary rule of the fourth amendment.

In Commonwealth v. Pincavitch, 206 Pa. Superior Ct. 539 (1965), defendant was arrested, without a warrant, for the summary offense under Pennsylvania law of violating an act forbidding minors to consume alcoholic or malt beverages. The arresting officer did not see this offense being committed but arrested merely because he smelled the odor of alcohol on

defendant's breath. Incident to the arrest, a warrantless search was made of defendant and evidence seized which was used against him at a trial for burglary and larceny. In a rather vague opinion, the court held that the evidence seized was inadmissible at trial under the exclusionary rule of the fourth amendment because the arrest of defendant was unlawful. It is not clear whether the court based its decision upon the fact that the police lacked probable cause to arrest, or whether it ruled the evidence inadmissible under the fourth amendment because the officer had arrested defendant for a misdemeanor which was not occurring in the arresting officer's presence as required by Pennsylvania law.

It is the opinion of this court that a warrantless arrest for a misdemeanor which is not being committed in the presence of the arresting officer and which is hence unlawful under Pennsylvania law, is constitutionally unreasonable under the fourth amendment, notwithstanding that the police officer may have probable cause to arrest. The Pennsylvania Legislature has chosen to make a warrantless arrest for a traffic offense which is a misdemeanor lawful only when the offense is committed in the arresting officer's presence. The legislature could easily change this rule by legislating that a police officer may arrest for a traffic offense characterized as a misdemeanor when the misdemeanor is not being committed in his presence as long as the arresting officer has probable cause to believe that the person arrested has committed or is committing the misdemeanor. It is difficult to see how an arrest can be reasonable under the fourth amendment if it is conducted in violation of a State law. As said in Cohen v. Norris, 300 F. 2d 24, 31 (C.A. 9th 1962) (a suit under the Civil Rights Act against State Police officers for unreasonable search and seizure): "An

intrusion by the police in the form of a search and seizure is arbitrary, and therefore 'unreasonable' if not authorized by law." It appears that the mandate to the States in Ker v. California, 374 U.S. 23, 33-4 (1963), to develop their own workable rules governing arrests, searches and seizures so long as those rules do not violate the constitutional proscriptions against unreasonable searches and seizures, gives the right to States to require more than probable cause to legitimate a warrantless arrest. Especially since State law controls in a criminal prosecution, it appears that an arrest in violation of a State law is unreasonable under the fourth amendment, even if it meets the constitutional prerequisite of probable cause. It is difficult to interpret the fourth amendment as permitting the introduction of evidence obtained by police officers acting beyond their lawful mandate.

In United States v. DiRe, supra, defendant was convicted of a crime under a Federal statute in a Federal district court. The court first held that the lawfulness of the warrantless arrest of defendant (and the search of his person incident to the arrest) must be judged under New York State law. In response to the claim of the government that the warrantless arrest of defendant was lawful under State law, the court said that defendant's arrest could not be upheld as a warrantless arrest for a misdemeanor, since the misdemeanor was not committed in the presence of the arresting officer as required by the applicable New York statute. The court held that since the arrest of defendant was unlawful under New York law, the resulting search incident to arrest was also unlawful. As a result, the evidence obtained from the unlawful arrest and search was inadmissible at defendant's Federal trial by virtue of the exclusionary rule of the fourth amendment. The DiRe case was decided before

the United States Supreme Court held that Federal standards of probable cause for warrantless arrests under State statutes applied in State court criminal trials: Beck v. Ohio, 379 U.S. 89 (1964). It is arguable that in DiRe the court based its decision that the warrantless misdemeanor arrest was unlawful under the applicable New York law on the fact that the arresting State officer lacked probable cause, but if so, it is difficult to determine whether the lack of probable cause was grounded in State law standards or fourth amendment standards. But even if the court did base its holding on a lack of probable cause under the fourth amendment standards, the court expressly said at page 591: "The New York statute provides the standard by which this arrest must stand or fall." It thus appears that, at the very least, the court was holding that State law would control on the issue of the legality of a warrantless arrest, as long as the State law required probable cause; and that if the arresting officers did not comply with such State law prescribing the proper manner of a warrantless arrest, then evidence obtained as a result of such an arrest would be inadmissible under the fourth amendment at a criminal trial in Federal district court even if the arrest by State officers did not violate the constitutional commandment of probable cause for a warrantless arrest.

The fact that the instant case arises in a State court rather than a Federal district court is no reason not to apply the reasoning of the DiRe opinion to the evidence sought to be introduced here. As said in Ker v. California, 374 U.S. 23, 33 (1963); ". . . the standard of reasonableness is the same under the Fourth and Fourteenth Amendments." If, as in DiRe, the unlawful arrest under State law was unreasonable under the fourth amendment within the context of a criminal trial in Federal district court, it appears that an arrest which is illegal under State law would also

be unreasonable under the fourteenth amendment as it incorporates the fourth amendment in a State court criminal trial. The fourteenth and fourth amendments are designed to protect citizens from all illegal arrests, regardless of whether State law or the Federal Constitution brands the particular arrest as unlawful.

Since the warrantless seizure of defendant is unreasonable under the fourteenth and fourth amendments because in violation of Pennsylvania law, it follows that all the evidence sought to be admitted against defendant which was obtained as a direct result of the unlawful arrest must be suppressed under the doctrine of Wong Sun v. United States, 371 U.S. 471 (1963). The inadmissible fruit of such unreasonable seizure includes the results of the field sobriety test and the results of the Breathalizer test administered to defendant at the State Police Barracks in Mercer.

## ORDER

And now, October 3, 1972, defendant's motion to suppress the field sobriety test and intoximeter test is granted and it is directed that the Commonwealth shall not use at the trial of the case, any evidence resulting from these two tests. It is further ordered that exceptions are granted to Commonwealth of Pennsylvania from the findings of fact, conclusions of law and the order of this court. Motion to quash indictment is refused.