## Rounick's Petition

*George T. Steeley*, for petitioner.
*A. Allan Goodman*, contra.

SLOANE, J., December 31, 1942.—Petitioner is a minor and his petition is to change his surname (Rounick) to his mother's maiden surname (Miller).

The reasons given for the change are: (1) That the child is and has been living with his mother since 1936, supported solely by her; (2) that the mother has filed

a notice of intention to retake and use her maiden name (Act of May 25, 1939, P. L. 192, 23 PS §98) (she divorced her husband in 1937) ; (3) that the child "desires to change his name to Jerome Miller and to have the same surname as his mother".

The father is against it. His answer is (1) that when he tried to see his son on four occasions, each time he was arrested by his former wife on criminal charges of "assault and battery and threats to kill"; on three of these occasions he was discharged by the magistrate and on the fourth was held and after serving five days in the county prison was discharged by the court; (2) he was forcibly evicted from his home (1936) by his former wife when he was unemployed and could not contribute to his son's support; (3) that he is now remarried and employed and is willing to help support his son "provided that he will be permitted to see him without the constant fear of his arrest" by his former wife.

At the hearing, these pertinent facts were established: Petitioner has been living with his mother, at her parents' home, since September 1936. Immediately after the divorce in 1937, petitioner's mother resumed the use of her maiden name, and has used that name ever since, though not until September 26, 1942 (only three days before the filing of this petition), did she file a written notice of intention to use her maiden name. While petitioner is registered at school as Jerome Miller Rounick, he is known as Jerome Miller in the classroom, in the neighborhood, and among his associates. He dropped "Rounick" because, in the mother's words, "wherever he goes he is addressed as Jerome Miller". Only once did the father see the child since 1936, and that was in the Municipal Court, where the mother voluntarily took the child to see his father. Petitioner's mother has been his sole support throughout these six years. The child's father remarried in September 1940.

This proceeding was filed under the Act of April 18, 1923, P. L. 75, 54 PS §1 et seq.[1] and we shall assume that the child has the right to file the petition under the act, though the proviso of section 4 might indicate to the contrary. (See Falcucci's Applications, C. P. No. 7, June term, 1940, no. 464, cited in 105 Legal Intelligencer 607. As to provisos in statutes, see Endlich, Commentaries on the Interpretation of Statutes (1888) 257, County of Lehigh v. Meyer, 102 Pa. 479 (1883), and Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 54, 46 PS §554). But we neglect to decide the point for our inquiry here is not on the right of the minor to file the petition, as to which the answer raises no question, but on the propriety of our granting it.

At common law, a person was free to change his name if he so chose, and our early statutory provisions were in affirmance and aid of such right, merely fixing the time when the change took effect, and not impairing or restricting it: Act of April 9, 1852, P. L. 301; see Laflin & Rand Co. v. Steytler et al., 146 Pa. 434, 442 (1892). However, the Act of July 9, 1919, P. L. 822, sec. 1, 54 PS §5, made it unlawful for a person to assume a name different from the one by which he has been known unless such change is made with court approval. And the Act of 1923 sets forth the conditions under which such approval is to be granted:

"If the court be satisfied after said hearing that there is no lawful objection[2] to the granting of the

---

[1] The Act of May 25, 1939, P. L. 192, 23 PS §98, pursuant to which a divorced woman may resume her maiden name, has no bearing upon the question of petitioner's right to a change of name. That act specifically deals only with the right of a woman who has been divorced from the bonds of matrimony "to retake and thereafter use her maiden name".

[2] A "lawful objection" within the meaning of the act would seem to be one which defeats the petition as a matter of law, and which the discretion of the court cannot overcome. For example,

prayer of said petition, a decree may be entered by said court changing the name as prayed for. . . .": section 3.

We take this section to place the granting of the petition upon the court's discretion.[3] See Weinstein's Petition, 35 D. & C. 227 (1939). That appears to be so in other States: see In re Ross, 8 Cal.(2d) 608, 67 P.(2d) 94 (1937) ("as to the Court may seem right and proper"); Re Taminosian, 97 Neb. 514, 150 N. W. 824 (1915) ("upon being duly satisfied"); Re Snook, 2 Hilton (N. Y. Common Pleas) 566 (1859) (where statute required showing of pecuniary benefit resulting from desired change of name): Annotation, 110 A. L. R. 219.

It has been stated that the courts should encourage rather than discourage the filing of petitions for change of name: Weinstein's Petition, supra, p. 228; In re Useldinger, 35 Cal. App. (2d) 723, 726, 96 P.(2d) 958 (1939); In re Slobody,173 N.Y.Supp. 514,515 (1918); Re Ross, supra, p. 609. However, that dictum has not been applied in cases involving a petition, opposed by one parent, for change of name of a young infant without the capacity to understand the full nature of the proceedings. In In re Epstein, 121 Misc. 151, 200 N. Y. Supp. 897 (1923), the court refused the application of

a creditor of petitioner who objects that publication of notice of the petition was not made as required by the act would have a "legal objection" preventing granting of the petition's prayer. The act states that where no legal objection is present the court "may" enter the decree; the discretion exists in the absence of such legal bar.

[3] The New York legislators distinguish between children over and under 16 years of age. The petition for change of name of a minor under 16 may be brought by the child's general guardian or by both parents, but only one of the child's parents, if both are living, cannot bring such petition: In re Lyons, 19 N. Y. Supp. (2d) 839 (1940); the difference in capacity to understand the nature of the proceedings for change of name would appear to be the basis for the legislature's distinction. See Laws of 1920, c. 924, as amended, 8 McKinney's Consolidated Laws of New York §60.

a five-year-old boy to change his surname to that of his stepfather, which was the same as his mother's maiden name, where the child's natural father objected and no benefit of a financial nature to the child was shown. The court said (p. 152):

"The unfortunate predicament of this child of parents who so coldly and without apparent thought of its future arranged the dissolution of their marital ties does appeal to this court. The proposal made in the moving papers does not. The child should and in the course of time must know of his parentage. If, when he fully appreciates the circumstances and is capable of selecting a name for himself, he chooses to select the surname of the man termed in the petition as his 'stepfather,' he may do so. . . Until then the court will not and should not endeavor to interfere with the usual custom of succession to paternal surname, nor foster any unnatural barrier between the father and son." See also Application of Biegaj, 25 N. Y. Supp. (2d) 85 (City Court, 1941). Cf. Application of Horn, 21 N. Y. Supp. (2d) 453 (Supreme Ct., 1940), where the court exercised its discretion in favor of the prayer of a minor 16 years old.

The person to consider is the child. In all cases affecting children, they are the ones to be kept in mind by the court disposing of such cases. See, for example, Commonwealth ex rel. v. Preston et ux., 148 Pa. Superior Ct. 182, 184 (1942), Commonwealth ex rel. v. Daven et al., 298 Pa. 416 (1930), Commonwealth ex rel. v. Faxstein, 84 Pa. Superior Ct. 243 (1924), Commonwealth ex rel. v. Hoffman, 91 Pa. Superior Ct. 213 (1927), Commonwealth ex rel. v. Martocello, 148 Pa. Superior Ct. 562 (1942), Rumsey's Case, 135 Pa. Superior Ct. 515 (1939), and 46 C. J. 1235, §15(2).

With this primary object before us, we see nothing to help the welfare of the child by granting this petition. We are convinced that, were we to grant it, we would be lending our aid to the "estrangement of father

and child". To decree a change of name would simply be another step in the direction, encouraged by the mother, of complete severance of the father-child relationship. It is pretty plain that the mother is the one who wants the change, for her son is too young to know and I doubt strongly his capacity to understand the nature of the proceeding, let alone its initiation. On the stand the boy said simply: "Everybody on the avenue addresses me as Jerome Miller, and I would like to have my mother's name, because I love her." Unmeet the parents still are for and with each other, and the child is between them. Given the premise that there was a divorce, there is in this matter an echo of the rip and tear of the marital tie. Reproach is not rolled away. And it is not a minor echo to which I hesitate to give articulation.

We do not here decide that in all cases an infant's petition by his mother and guardian, opposed by the father, will be dealt with likewise, for after all, the matter is one of application of the sound discretion of the court on the facts of each case. We can conceive, for example, where a father by complete abandonment of a child or other improper conduct would lose all right successfully to object to an infant's petition for change of name. But that is not this case: The father has sought to visit his child and asserts his interest in his son and his desire to preserve a parental relationship. And so, exercising our discretion, consonant with an important consideration of public policy, we dismiss the petition; we at least place no further barrier in the way of the father reëstablishing himself in the affection of his son.

We think it better to let this case rest until the minor knows his own mind and the father has had further opportunity to pursue his professed desire to retain a place in the child's life. If later the child again seeks the change, we will be in better position to entertain the expression of his desire.

*Order*

And now, December 31, 1942, the petition of Jerome Miller Rounick for a decree to change his name to Jerome Miller is dismissed, without prejudice to a renewal of the petition at subsequent proper time.