In the Matter of Clyde Anthony THOMAS, Robyn Thomas, and Robert Thomas, Minors.

William Dickie TAYLOR, Petitioner-Respondent,

v.

Clyde THOMAS, Respondent-Appellant.

No. 32701.

St. Louis Court of Appeals.

Missouri.

May 16, 1967.

Frank Mashak, St. Louis, for respondent-appellant.

No attorney for petitioner-respondent.

RUDDY, Judge.

The appeal in this matter was originally taken to the Supreme Court of Missouri. Appellant contended that his constitutional rights were violated when the trial court changed his natural child's name from Thomas to Taylor. The Supreme Court of the State of Missouri found that there was no constitutional question before it and transferred the cause to this court for lack of jurisdiction. In our summation of the nature of this case and the facts that were before the trial court we adopt portions of the opinion of the Supreme Court of Missouri (404 S.W.2d 199) with some changes, without the use of quotation marks.

William Dickie Taylor filed a petition in the Circuit Court of the City of St. Louis, Juvenile Division, asking for the adoption of three minor children, Clyde

Anthony Thomas, Robyn Thomas, and Robert Thomas. The petitioner's wife, Della, is the mother of the three minors and she filed her consent for the adoption in writing.

Clyde Thomas, respondent below, filed an answer asking that the court refuse the adoption of his child, Clyde Anthony Thomas. He denied that he was the father of Robyn and Robert. A guardian ad litem was appointed for the minors. After a hearing, the court denied adoption but ordered the names of the three minors to be changed from Thomas to Taylor. Clyde Thomas filed a motion asking that the portion of the decree changing the name of his child Clyde Anthony Thomas be deleted or, in the alternative, to grant him a new trial. He also asked that the order assessing a portion of the costs against him be set aside. These requests were denied and Clyde Thomas appealed, as we have pointed out, to the Supreme Court of the State of Missouri.

The facts, as shown by the record, are as follows: Clyde Thomas and petitioner's wife, Della Taylor, had been married but were divorced in February, 1962. While they lived together, the three minor children involved in this case were born. Clyde Thomas claimed Clyde Anthony Thomas was his child but that Robyn and Robert were not. Della Thomas Taylor admitted that to be so. The divorce decree granted custody of Clyde Anthony Thomas to the mother.

Petitioner William Dickie Taylor and Della Thomas, mother of the three minors, were married on April 15, 1963. At the time of trial, the three minors were in the custody of the petitioner and Della. It was in evidence that William Dickie Taylor, prior to his marriage to Della, had been living with a woman named Velma (Osborne) Taylor. They had four children. These children were in custody of their mother Velma who was receiving aid through the A.D.C. program.

Petitioner William Dickie Taylor testified that he was never married to Velma. There was substantial evidence that he was. It was admitted that no divorce was ever applied for or obtained by Velma or William Dickie Taylor.

The trial court entered a decree denying the adoption of the three children on the ground that the evidence did not definitely show that petitioner Taylor and Della were legally married. By its decree, the trial court did order that the three minors remain in the custody of their mother and that their names be changed from Thomas to Taylor. It was stated in the decree that "the best interest of the three minor children would be served by the change of their names from Thomas to Taylor."

We are only concerned in this appeal with that part of the trial court's order changing the name of Clyde Anthony Thomas to Taylor and that part of the court's order assessing part of the costs against the appellant, Clyde Thomas.

We think the findings and judgment of the trial court should be reversed and in support of the result we reach we state the following additional facts: Clyde Anthony Thomas was born on September 3, 1954 and was approximately nine and one-half years of age at the time the proceeding for adoption was instituted. Della was married to Clyde Thomas on the 20th day of March, 1954. The two lived together until the early part of 1956 when they separated. The two children Robert and Robyn were born in November, 1956, and it is admitted by Della that Clyde Thomas was not their father. It seems that during the years 1955 and 1956 Clyde Thomas was in the military service and during much of the time he was in the service he was in the hospital. The service hospital record was introduced showing that he was hospitalized from December 1, 1955, until April 24, 1956. This was a continuous confinement. Clyde Thomas testified he did not know that he was divorced until the middle of January 1963. He married his present wife on

January 27, 1963. Clyde Thomas learned approximately two years before the hearing that he had cancer of the throat at which time he was residing in San Francisco, California. He continues to be treated for this condition. He said he was hospitalized at the time Della obtained the divorce. While he resided in San Francisco, California he sent Della several checks for support of the child and on one occasion he sent her $50.00. He said that he had his mother, who resides in St. Louis purchase clothing for the child, such as winter suits, summer suits, shoes and that she would pay the bills for these purchases and he would reimburse his mother. He told the court that he is willing to continue to support the child. He has been back in St. Louis since the latter part of August, 1964 and said he was not employed during the year 1963 and obtained his first employment when he came back to St. Louis. On his return to St. Louis he asked to see the boy but has been denied this privilege by Della and the petitioner. He complained that the petitioner and Della would not let the boy call him or talk to him and complained about the shabby condition of the boy's clothing. He told the court that he opposed the adoption of the boy by the petitioner and strongly opposes the change of the boy's name from Thomas to Taylor.

The mother of appellant, Clyde Thomas, testified that the boy, Clyde Anthony, lived with her during the summer of 1963 until it was time to go back to school. She supported him during this period and thereafter he would live with her on weekends, coming Friday night and returning to Della on Sunday night. She said that her son, Clyde Thomas, supplied the boy's clothes and supported him while he was with her.

Della testified that other than some payments made by Clyde Thomas in 1962 she received no other support from him for the child. However, she did admit receiving three money orders for the child's support from Clyde Thomas after the petition for adoption was filed and that these money orders were returned to him.

The petitioner, William Dickie Taylor, testified that he was married to Della on April 16, 1963 and that he had never been married before. He admitted living with another woman named Velma Osborne who had assumed his name. He said he lived with her for eight years and when asked, "* * * how many children were born of that marriage?" he answered, "Four." He said he started living with Velma in 1949 and ceased to live with her in 1957. It was disclosed that he had one of the four children living with him but that he did not support the other children who were living with their mother, Velma. He admitted that she was receiving Aid to Dependent Children. He admitted that Velma still uses the name of Taylor and to his knowledge she is not married. He admitted that he has not given Velma any money for the support of the children. He disclosed that he was a welder receiving $140 per week gross pay with a take home pay of $125 per week. Petitioner was shown a photostatic copy of an application to the County Clerk of Dallas County, Texas dated July 2, 1949 for a marriage license to William D. Taylor of Terrell, Texas. He was asked if the signature appearing thereon was not his and answered, "It looks like it. Q. Looks like it. Is it your signature? A. Don't make my 'D' like that. Don't make my 'T' like that." He finally said it was not his signature, but added, "It's similar to my signature." At other places in his testimony he said the signature on the application was "awful close to it." Continuing to deny that he married Velma Taylor he said, "* * * you got papers and proof there that look good, but I never married nobody." When asked if she ever got a divorce to his knowledge, he answered, "No—I don't know." He then said "I don't know. I mean—I left her." At another place in his testimony he said that as far as he knows he would not have married her. The court questioned him as follows: "* * * Well, as I understand it, your testimony is that you've only been married once in your life." He answered, "* * * Only time I've been married. I stayed with her common law. I

stayed with her common law, and I can bring you three or four more women I stayed common law. For me going and standing in front of a preacher and they say if I do, Della is the only one that I did that. I didn't do that with Velma, and where they got that from I don't know." He admitted that he had been treated for mental disorders when he was in the Navy in 1941 and that he was in the State Hospital for Mental Patients in Texas in September of 1949.

Velma Osborne Taylor testified that she now resides in the City of St. Louis and that she married the petitioner William Dickie Taylor on July 2, 1949, and that she has never been divorced from him nor has he ever been divorced from her. She said four children were born of this marriage, three of them are living with her, and one lives with the petitioner. She said she lived with petitioner until December 7, 1957 at which time they separated. She now receives Aid to Dependent Children. There was introduced in evidence a marriage license between the petitioner and the witness showing that both of them were united in marriage on the 2nd day of July 1949 by T. S. Sanders, A.M.E. Zion Minister. It was stipulated that Velma Taylor the witness, was the person that petitioner said he lived with in Texas and in St. Louis.

In an effort to prove that he had not married Velma on July 2, 1949 petitioner introduced in evidence, in rebuttal, a Police Record of the Metropolitan Police Department which showed that he had been arrested on various charges thirty-three times between the years 1940 and 1962. He admitted he was the person identified on this Police Record and that the record accurately reflected charges against him. Some of these charges were of a very serious nature. None of the arrests for these charges was made on July 2, 1949 and the arrest closest to that date is June 7, 1949.

The Deputy Juvenile Officer in response to questions of the court said that the boy, Clyde Anthony, would like to be a part of the Taylor family and have the same name as the rest of the children, but that he also expressed a great love for his grandparents and for his father. The evidence discloses that the child Clyde Anthony is known around the house by the name of Taylor but that he is known in school as "Thomas." The prayer of the petition filed by the petitioner, in addition to asking for a decree of adoption of the said children, asked that their names be changed and in the case of Clyde Anthony Thomas asked that his name be changed to Clyde Anthony Taylor.

■ Under the adoption statutes the petitioner for adoption may allege that he desires to change the name of the person sought to be adopted to the name of the petitioner. Section 453.020 RSMo 1959, V.A.M.S. Under the provisions of Section 453.080 RSMo 1959, V.A.M.S., the court after due hearing, if it finds that it is fit and proper that such adoption should be made, enters its decree of adoption, " * * * and the court may decree that the name of the person sought to be adopted be changed, according to the prayer of the petition." The primary action involved in the instant proceeding is that of adoption of the minor children named in the petition and incidental thereto, the court is authorized, as a part of its decree, to change the names of the persons sought to be adopted according to the prayer of the petition. The object of the proceeding is not to change the names of the children involved, but was to effect the adoption of said children and that, upon adoption, the names may be changed. It logically follows that a decree of adoption must accompany or precede any order of the court in an adoption proceeding before the name of the person sought to be adopted may be changed. A casual reading of the Statutes above referred to indicates clearly that it was not the intention of the Legislature to permit one who is not a parent of a child or its legal guardian to change the name

of a child without first obtaining a decree of adoption.

Petitioner contended in the lower court that if the court saw fit to deny the petition for adoption the best interest of Clyde Anthony Thomas would be served by changing his name to Clyde Anthony Taylor to coincide with the family with which he resides. Assuming, without ruling, that the court had such authority, we do not think the best interest of the child would be served by the suggested change of name. The father cannot be arbitrarily deprived of his right to have his child use his name unless it is in the interest of the child that such change be made. The desires of the child, especially if very young, as in this case, are not controlling. 65 C.J.S. Names § 11 (2), p. 30. The natural father in the instant case has shown a desire to preserve the parental relationship that now exists. A perusal of the testimony we have summarized will show that he has not been indifferent to his son's needs. While there appear to be some lapses in the support of his son, as the Guardian Ad Litem observed in his report to the court, this was apparently the result of the natural father's periodic hospitalization for his cancer condition. The natural father has indicated he will support the child in the future. Without delay, by a proper pleading in the court, he objected to the adoption of the child and the change of name.

Further, the trial court found that there was insufficient evidence of the legality of the marriage of petitioner to Della to permit it to enter an order of adoption. This finding by the trial court is fully supported by the record. This circumstance, together with petitioner's obvious disregard of the need to observe the laws of matrimony and his boastful comment about the number of women he lived with without the benefit of a marriage ceremony marks him as a person whose name should not be conferred on anyone and especially on a minor child whose immaturity prevents him from understanding the offensive and grievous nature of petitioner's antecedents. The final bar to petitioner's right to have this minor bear his name is his shameful effrontery in disclosing his Police Record, showing numerous arrests and convictions in a futile effort to rebut and avoid the consequences of the evidence which demonstrated that he had married Velma. Opposed to the bad record of the petitioner is that of the natural father who has shown a desire to preserve the parental relationship and who has not been indifferent to his son's material welfare throughout the period of the child's life.

We conclude that the best interests of the child and his welfare do not call for a change of name at this time from that of his natural father to the surname of the petitioner. As we have pointed out the boy is too young to be capable of making the choice of name for himself. Also, the boy is using the name of his natural father in school and it is therefore unlikely that he will be embarrassed by the fact that his name is different from that of his mother and the man she is living with. If later in life when the child becomes of mature age and has the ability to fully understand the significance of his paternal surname and the antecedents of the man with whom his mother is living, he chooses to adopt the name of Taylor other than that of his father it will be his privilege to do so. In the meantime we think it would not be to the best interests of the child to confer and thrust upon him a name which he may later reject.

In its findings and judgment the trial court allowed the Guardian Ad Litem the sum of $200 for services rendered and assessed this cost against the petitioner and respondent in the trial below. It is sufficient to point out that petitioner, Taylor, who filed the adoption proceeding was unsuccessful and therefore all costs including the fee of the Guardian Ad Litem should be assessed against the petitioner. Civil Rule 77.06 V.A.M.R.

We reverse that portion of the findings and judgment of the lower court which purports to change the name of Clyde Anthony Thomas to Clyde Anthony Taylor and we remand the case with directions to amend the findings and judgment in accordance with the views expressed herein. We further direct that the findings and judgment be amended to assess all costs, including the fee of the Guardian Ad Litem, against the petitioner below.

ANDERSON, P. J., and WOLFE, J., concur.