ELYSSA T. HALL a/k/a Elyssa T. Williams
*v.* DAVID F. HALL, JR.

[No. 511, September Term, 1975.]

*Decided February 2, 1976.*

The cause was argued before ORTH, C. J., and THOMPSON, POWERS and MOORE, JJ.

*Jerome Blum* for appellant.

*Thomas E. Klug,* with whom were *Klug & Grier* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

By a decree of the Circuit Court of Baltimore City issued 17 February 1971, Elyssa T. Hall (Mother), after seven years of marriage to David F. Hall, Jr. (Father), was granted a divorce *a vinculo matrimonii* upon proof that the parties voluntarily lived separate and apart without cohabitation, for more than eighteen months, and that such separation was beyond expectation of reconciliation. An Agreement between the parties, dated 15 April 1969 was approved and made a part of the decree, and, in accordance therewith, guardianship and custody of Jennifer Anne Hall (Child), the minor child of the parties, born 10 July 1964, was given to

Mother, with the right of visitation in Father as set out in the Agreement.[1] Father was ordered to pay $50 bimonthly directly to Mother for Child's support and maintenance.

On 3 December 1974 Father filed a "Petition for Injunctive Relief" in the divorce case.[2] The petition alleged that Mother, in whose custody Child remained, had married one Thomas Williams and had requested Child's "school teachers and other members of the community to address the minor child by using the surname of Williams, that being the step-father's name", although Child's name had never been legally changed by court order, "nor has the natural mother and step-father adopted [her]." The petition asserted that Father "visits [Child] at least once a week, takes great interest in her physical and mental well-being, faithfully pays the stipulated support for his child, and has a fatherly devotion to this minor child." Father prayed the issuance of an order "directing [Mother] to show cause, after due notice, why she should not be enjoined from allowing and encouraging the minor child to be known as Jennifer Anne Williams", and "for such other and further relief as the nature of his cause may require." The show cause order issued. Mother's Answer admitted all the allegations in Father's Petition, but said that it was "the wish of [Child] to be called Jennifer Williams as that name would be less confusing to her schoolmates and friends in the community." Mother averred that "there is nothing improper or illegal about having the child of the parties referred to as Jennifer Williams." She prayed that the Petition be dismissed with costs and expenses.

A hearing on the Petition and Answer was had on 11 March 1975. Child was excluded from the courtroom.[3]

---

1. Paragraph 5 of the Agreement provided, *inter alia:* "The husband shall have the right and privilege of visiting his minor daughter on Tuesday and Thursday evenings from 6:00 P.M. until 9:00 P.M., and on Sunday from 12:00 noon until 9:00 P.M."

2. The Circuit Court of Baltimore City, Docket 110B, folio 754, file B97581.

3. When the hearing commenced, Father's counsel began to recite a stipulation. The chancellor asked counsel if he wanted Child in the courtroom. The transcript reads:

Although the substance of the allegations set out in the Petition and admitted in the Answer [4] were entered in the record by stipulation, Father's counsel said he "would like to put [Father] on just briefly to take testimony in that regard." Father repeated the facts alleged in the petition, admitted in the Answer and stipulated to at the hearing and elaborated on his assertion of devotion and great interest in Child's physical and mental well-being. The chancellor asked what information Father had that Child was using the name "Williams". Counsel for Mother said:

> "Your Honor, I will concede the young girl is referred to in school as Williams. Her school records indicate her name is Hall, but her friends call her Williams, and that she has requested, and her mother has requested, are urgent [sic] that people address her as Williams, I will concede to that."

Asked by his counsel how he felt about Child using the name "Williams" Father answered:

> "Well, your Honor, I was very upset to learn she was using Williams. I am very devoted to my daughter. I provided support on a regular basis. I see her on a regular basis. I don't think it is particularly fair to me, and in my opinion I don't think it is fair to her either. I think [my daughter's] expectations are she is going to be adopted, and I

---

"MR. BLUM [Jerome Blum, Esq., counsel for Mother]: It doesn't make that much difference if it's something she shouldn't hear.

MR. KLUG [Thomas E. Klug, Esq., counsel for Father]: The natural father says he would prefer that the child not be in the courtroom.

MR. BLUM: Then she can leave.

THE COURT: So often the children shouldn't be here in the courtroom.

MR. BLUM: There is nothing gory.

THE COURT: There has got to be a dispute, otherwise you wouldn't be here. I think the parties ought to be free to say whatever they want to say about each other and the children shouldn't hear it."

4. See Maryland Rule 372, § a 2 and § b.

think she believes this is going to happen in the near future and that is why she is using Williams. It just doesn't sit right with me. I don't think it is particularly fair to me or my daughter, Jennifer."

Father was not cross-examined. He was the only witness. Counsel argued, and the chancellor held the matter *sub curia*.

The case came before the chancellor again on 7 April 1975. Counsel were heard. The chancellor said:

"Let me say this for the record. I felt very strongly about this case when it came up; in fact, I will say for the record that I just think that it is just horrendous that a parent who has been divorced from her husband would even attempt to change that child's name and, in a sense, cut off the parental rights of the father. I was very upset about it. Without having law to back me up, I was so sure the law would not tolerate this. I was very surprised when I first read Mr. Blum's brief which referred to the common law right. I was not persuaded at all by him that a person can use any name they choose. If the children go to school, they can tell the teacher, 'I want to be called by this or that name'. I think that only applies to adults. Even an adult, the Court can enjoin them in spite of common law."

He deemed *West v. Wright,* 263 Md. 297 (1971) as supporting his position. Apparently he found it not to be in the best interest of Child for her to use the name "Williams".[5] He ordered that Mother "be enjoined and restrained from allowing and encouraging [Child] to be known as JENNIFER ANNE WILLIAMS." Mother noted an appeal from the order.

---

5. The chancellor said:
    "For a man to have regular visitation with a child everybody else calls by the new husband's name is just so fraught with unfairness that I am happy that I can at least grant this injunction to restrain the mother in this case from in any way permitting a name change either by referring to it, telling the teachers that he can call her by

The issue for decision is whether, without resort to judicial proceedings, a child in the custody of the mother pursuant to a decree of divorce may be called by a different surname in the face of opposition by the father.

The common law recognized that an individual could change the given name, surname, or both, by which the community knew him merely by assuming a new one, with the restriction that the change could not be effected for fraudulent purposes or to interfere with the rights of others. 44 Cornell L. Rev. 144, 145 (1958) and cases therein cited.[6] The common law sprang and was gradually developed out of the groundwork of custom. It was the ancient custom for the son to adopt a surname at will, regardless of that borne by his father, and the practice extended to the given name also. *Smith v. United States Casualty Co.*, 197 N. Y. 420, 90 N. E. 947 (1910).[7]

Maryland recognizes the common law rule. The Court of

---

any other name or in any other way denying the father the right to have his child bear his last name. Further, the language in the West case, the Court pointed out, 'If any embarrassment', in talking about the best interests of the child. The only reason I can see is that a mother would say, 'Well, I have one name and when I register this child I want her to have my name so nobody will suspect it is an illegitimate child or I have been divorced'. The Court says any embarrassment is clearly outweighed by the desirability of maintaining some form between the father and his offspring as a bond which, incidentally, may be quite tenuous in a situation where the parents are divorced and the mother has custody of the children. If we are dealing with the best interests of the child, certainly then the son needs to know who his natural father is. To change the name would cause confusion in the child. It certainly is not in the child's best interest."

**6.** It was said in Davies v. Lowndes, 1 Bing. N. Cas. 597, 618 (1835): "[A] man may, if he pleases, and it is not for any fraudulent purpose, take a name and work his way in the world with his new name as well as he can."

**7.** *Smith* discusses in detail how surnames came to be used and gives examples of men who abandoned the name of their youth and chose another made illustrious by their writings, paintings or deeds — Rembrandt, Balzac, Voltaire, Dante, Maurice Barrymore, Henry Irving, Mark Twain, Artemus Ward, Napoleon, the Duke of Wellington, U. S. Grant. 90 N. E., at 948, 949. See 16 Encyclopedia Britannica (name) 63-64 (1947); Greene, Law of Names and How to Change Your Name 71 (1954), referred to in The Cornell Law Review note, and the various authorities cited and quoted in *Smith*.

Although in 1910 when *Smith* was decided, there were apparently few decisions directly in point, *Smith* observed, at 949, that "there are many dicta by eminent judges recognizing as an established rule that a man may change his name, Christian, surname, or both, without resort to legal

Appeals said in *Romans v. State*, 178 Md. 588, 597 (1940): "If there is no statute to the contrary, a person may adopt any name by which he may become known, and by which he may transact business and execute contracts and sue or be sued. *William Gilligan Co. v. Casey*, 205 Mass. 26, 91 N. E. 124; *Smith v. U.S. Casualty Co.*, 197 N. Y. 420, 90 N. E. 947; *Davies v. Lowndes*, 1 Bing. N. Cas. 597, 131 Eng. Reprint 147. And this without regard to his true name." [8] *Romans* was cited and its statement iterated in the majority opinion of the Court of Appeals in *Stuart v. Board of Elections*, 266 Md. 440, 446 (1972) [9]: "We have heretofore unequivocally recognized the common law right of any person, absent a statute to the contrary, to 'adopt any name by which he may become known, and by which he may transact business and execute contracts and sue or be sued'." [10] In *Hardy v. Hardy*, 296 Md. 412, 415 (1973) the Court said flatly: "In the absence of a statute to the contrary, a person may adopt any name by which he wishes to become known, as long as he does so consistently and nonfraudulently."

---

proceedings", and pointed out, at 950, that "The elementary writers are uniform in laying down the rule that at common law a man may change his name at will."

**8.** *Romans* concerned the name under which a person could be prosecuted for criminal conduct. "Hence", the Court continued, "if a person adopt or assume a name whereby he becomes known, so that the adopted or assumed name is sufficient for his identification, he may be prosecuted in his adopted or assumed name. On principle there can be no question of this doctrine. The crime is individual, and its prosecution is personal. The name is only material for its evidentiary value, to make certain the particular person charged with the offence." 178 Md. at 597.

**9.** Murphy, C.J., delivered the opinion of the Court in which Barnes, McWilliams, Singley and Digges, JJ. joined. Smith, J., dissented and filed a dissenting opinion at 451.

**10.** The question in *Stuart* was whether a wife could register to vote in her maiden name rather than her husband's surname. The majority held, at 447. "Consistent with the common law principle referred to in the Maryland cases, we hold that a married woman's surname does not become that of her husband where, as here, she evidences a clear intent to consistently and nonfraudulently use her birth given name subsequent to her marriage." The Court pointed out that in *Erie Exchange v. Lane*, 246 Md. 55 (1967) it held that a married woman may lawfully adopt an assumed name, which need not be her birth given name nor the name of her lawful husband, without legal proceedings. It believed that the rule was founded upon the English common law incorporated into the laws of Maryland by article 5 of the Maryland Declaration of Rights. 266 Md., at 447. As we view Judge Smith's dissent, he had no quarrel with the recognition of the common law as applicable in Maryland. He thought, however, that the question was what the General Assembly meant in the registration laws when "name" was mentioned. 266 Md. at 455.

In the 19th and 20th centuries express statutory provisions for changing names were enacted in many jurisdictions. They had a general pattern calling for a petition to the court stating the desired name and reasons for the requested change and, usually, notice by publication. Whether to allow the change was discretionary with the court, but in the absence of extenuating circumstances, the common law was followed in allowing great freedom of change. In the absence of an express provision that the statutory form is to be exclusive, the various statutes have been uniformly construed merely to provide a formal record of change and not to have abolished the common law rule. 44 Cornell L. Rev., at 145. For example, in *Davies v. Lowndes*, *supra*, Tindal, C. J., observed, in making clear that a man may take any name he pleases if not for fraudulent purpose, at 618: "And there is no necessity for any application for a royal sign manual to change the name. It is a mode which persons often have recourse to, because it gives a greater sanction to it, and makes it more notorious . . . ." *Smith v. United States Casualty Co.*, *supra*, declared that the common law right was not affected by the various statutes whereby a change of name was authorized by judicial proceedings. Such a statute ". . . does not repeal the common law by implication or otherwise, but gives an additional method of effecting a change of name." 90 N. E., at 950. *Mark v. Kahn*, 131 N.E.2d 758, 761 (Mass. 1956) held that the Massachusetts statute regulating the changing of name "does not restrict a person's choice of name but aids him in securing an official record which definitely and specifically establishes his change of name."

More than a century ago Maryland enacted legislation which authorized the changing of the name of any person by a judicial proceeding. Acts 1868, ch. 311. Although amended and implemented by Rules of Procedure, its substance remained the same.[11] It followed the general pattern of

---

11. Code, art. 16, § 123 now provides: "When the name of a person is changed by a court proceeding, the true and legal name of the person shall be that determined by the order of the court. A copy of said order, under

legislation on the subject in other jurisdictions. The statute does not provide that the statutory form is to be exclusive, and it is clear that the statute does not preempt the common law. In Maryland, a person may change his name under the common law rule or through a judicial proceeding as he desires.

We have indicated that even under statutes authorizing a change of name by a judicial proceeding, a court, in exercising its discretion, usually follows the common law allowing great freedom of change. Furthermore, generally the right to change one's name is not encumbered by the ordinary disabilities attendant upon minority.[12] Thus, the right has been available to minors as well as adults by common law and statute.[13] When, however, a minor's name is to be changed, and a court is involved, either under a change of name statute prescribing a court proceeding or under the common law rule upon objection by a proper person, "it is the duty of the court, as in all matters before it involving minors, to examine what is in the infant's best interests before determining if the requested change is warranted." *Hardy v. Hardy, supra,* at 415. It is this principle which is dispositive of Mother's contention [14] that because this case is "one of first impression in Maryland," there being no Maryland cases which "concern the effort of a parent to enjoin his child from adopting a name under the

---

the seal of the court, shall be sufficient and legal evidence of the facts therein stated."

Maryland Rules, ch. 1100, subtitle BH, spell out how an action for change of name shall be commenced — BH 70, the venue — BH 71, and the procedure — BH 72-74, culminating in a decree — BH 75. For change of name in an adoption proceeding, see Rule D74, § d.

**12.** The court said in Bruguier v. Bruguier, 79 A. 2d 497, 499 (N.J. 1951): "The ordinary rules of minority do not limit the right."

**13.** The 1868 Maryland statute provided that a petition for change of name could be filed on behalf of any infant residing in Maryland by the father, or in case of his death, by the mother or guardian. Rule BH 70, § b, states: "A petition on behalf of an infant may be filed by a parent, legal guardian or next friend."

**14.** Appellant's brief, Question VIII, pp. 14-15.

common law right to do so," we should look to *Bruguier v. Bruguier, supra. Bruguier* arose from a divorce action brought by the wife. A decree *nisi* was granted wife with provision for support by husband of two minor children in her custody with right of visitation. Each of the natural parents acquired a new spouse. The former wife moved to New York with the children. Thereafter husband filed a motion, praying among other matters, to require one of his infant daughters to desist from using and assuming the surname of her mother's new husband. The mother explained that the infant had suggested the change of name to avoid complications and explanations at the New York school. The court denied the father's motion. Although it considered the welfare of the children in determining that custody should remain in the mother notwithstanding the move to New York and its effect on the right of father's visitation, it based the denial of the motion regarding the change of name on the common law freedom of any person to change his name. It stated flatly, as we set out in note 12, *supra*, that the ordinary rules of minority do not limit the right. It recognized that there were statutes calculated to protect the public against fraud but found they did not apply in the circumstances. 79 A. 2d, at 499-500. The age of the daughter was not given in the opinion. We shall not follow the flat holding of *Bruguier* in the light of the dictate of *Hardy* that an infant's best interest is a necessary criterion in determining whether a change of name is warranted.[15]

We have found that when a change of a minor's name is before a court, be it by a statutory proceeding or through a proper challenge to the common law right, the court must exercise its discretion whether to permit the change so as to serve the best interest of the minor. The guidelines for the exercise of such discretion were set out in *West v. Wright*, 263 Md. 297 (1971). Although *West* was decided in the frame of reference of a statutory proceeding brought by a mother

---

**15.** In Mother's brief she states that the same result which was reached in *Bruguier* was reached in Bilenkin v. Bilenkin, 64 N.E.2d 84 (Ohio 1945) on similar facts. It is patent from the *Bilenkin* opinion that the court determined that it was in the best interests of the infant daughter to allow her to use the requested surname. The action of the court there was a sound exercise of judicial discretion.

to have the surname of her two minor sons changed to that of their stepfather, which the children's father and petitioner's former husband opposed, it is apparent from what we have said herein that we believe that the guidelines apply equally to a court's consideration of the common law right. Manifestly, therefore, we are not in accord with Mother's claim that *West*, being a statutory action brought under the BH Rules, is of no "precedential value" and is distinguishable on facts.[16] We note that best interests of the minor child are to be served whether that child be a son or a daughter. We reject Mother's contention and look to the teachings of *West*.

The Court in *West* thought that the case was one of first impression in Maryland, but found that "the rule in other courts has been to look at what is in the best interests of a child before determining if a name change is warranted." 263 Md., at 299. It cited *"Degerberg v. McCormick*, 41 Del. Ch. 46, 187 A. 2d 436 (1963); *Mark v. Kahn*, 333 Mass. 517, 131 N.E.2d 758, 53 A.L.R.2d 908 (1956); *Kay v. Kay*, 51 Ohio Op. 434, 65 Ohio L. Abs. 472, 112 N.E.2d 562 (1953); *Clinton v. Morrow*, 220 Ark. 377, 247 S.W.2d 1015 (1952)." It continued: "However, courts are also most reluctant to allow such a change except under extreme circumstances." [17] 263 Md., at 299. It determined that courts of our sister states have usually made inquiries along these lines in deciding cases involving a change of name of minor children:

> "1. Is there any proof of misconduct by the natural father which might make the continued use of the name by his children shameful or disgraceful?
>
> 2. Has the father wilfully abandoned or surrendered the natural ties between himself and his children?" *Id.*, at 300.

"In addition," the Court pointed out, "some courts have also taken into account other factors such as the age of the

---

16. Appellant's brief, Question VII, pp. 11-13.
17. The discussion which immediately followed was primarily in terms of depriving a son of his father's surname. The two children in *West* were male.

children involved and in one case even went into an elaborate discussion of whether a name per se was embarrassing", citing *Worms v. Worms,* 252 C.A.2d 130, 60 Cal. Rptr. 88 (1967). With respect to misconduct of the father, the Court of Appeals explained, 263 Md., at 301: "The most prevalent basis for allowing a change of name is where there is proof of serious misconduct by the father which adversely affects the best interests of the children . . . . There are no hard and fast definitions as to the type of misconduct required; however, the offense must be of such great magnitude that the continued use of the name by the children would result in significant harm or disgrace to them." The Court of Appeals expressly agreed "with the utilization of these general considerations", 263 Md., at 300-301, and applied them in deciding the case. In doing so, it observed that the courts must apply "a subjective test, not unlike that used in adoption proceedings." *Id.,* at 302. The Court noted that the mother argued that since the last name of the children was different than hers, it was a source of constant embarrassment to them all. But the record reflected only "minimal instances of embarrassment" — some minor skirmishes with playmates, "not uncommon to children of that age",[18] and some slight clerical mixups with doctors records. The Court concluded that, in the circumstances, "any embarrassment is clearly outweighed by the desirability of maintaining some bond between a father and his offspring; a bond which incidentally may be quite tenuous in a situation where the parents are divorced and the mother has custody of the children." *Id.,* at 302-303. See also *Marshall v. Marshall,* 93 So. 2d 822 (Miss. 1957); *Sobel v. Sobel,* 134 A. 2d 598 (N. J. 1957); *In Re Thomas,* 416 S.W.2d 52 (Mo. App. 1967); *Lazow v. Lazow,* 147 So. 2d 12 (Fla. App. 1962).

We have a further inquiry. It concerns the part which the wishes of the minor child play in the determination of whether a change of name should be effected. *In Re Thomas, supra,* concerned a child nine and a half years old. The court

---

18. One child was twelve years old and the other eleven years old.

said, 416 S.W.2d at 56: "The desires of the child, especially if very young, as in this case, are not controlling." In *Lazow v. Lazow, supra,* the child was twelve years of age. The court declared, 147 So. 2d, at 14: "At this tender age a child is not capable of making an intelligent choice in the matter of his name." In *Mark v. Kahn, supra,* one child was thirteen years old and the other ten years old. The court remarked, 131 N.E.2d, at 761-762: "[I]n view of their ages their consent would not necessarily be decisive. Until they reach an age when they are capable of making an intelligent choice in the matter of their name they ought not to have another name foisted upon them which they may later reject." Often, in denying an application by the mother, or in granting injunctive relief to the father, the courts have stated that they would consider the proposed change at a subsequent time, when the child himself would be capable of making a competent, intelligent choice. 44 Cornell L. Rev. 144, 149, n. 60 cites these cases on the point: "Pottish v. Pottish, 88 N.Y.S.2d 394 (Sup. Ct. N.Y. County 1948); Matter of Cohn, 181 Misc. 1021, 50 N.Y.S.2d 278 (Sup. Ct. N.Y. County 1943); Kay v. Kay, 112 N.E.2d 562 (C.P. of Ohio, Cuyahoga County 1953); Rounick's Petition, 47 Pa. D. & C. 71 (1942). See also Matter of Wing, 4 Misc. 2d 840, 841, 157 N.Y.S.2d 333, 335 (N.Y. City Ct. N.Y. County 1956) where the court observed:

> It may well be that the child wishes to change her name at this time but it will be time enough when she arrives at an age of more mature judgment; when she is able to decide for herself without conflicting pressures."

We suggest that the wish of a minor child with respect to a change of name should be considered by a court as is the wish of a child in a custody proceeding. In both matters the expression of the child's wishes concerns the interests of the child and the parents. We said in *Sullivan v. Auslaender,* 12 Md. App. 1, 5-6 (1971), citing *Radford v. Matczuk,* 223 Md. 483, 491 (1960): "[T]he desire of an intelligent child who has reached the age of discretion should be given some consideration in determining custody, although the wish is

not controlling." We quoted *Fanning v. Warfield,* 252 Md. 18, 24-25 (1969): "The weight to be given the wish of a child in a custody case depends on the contribution the reasons for that wish make to the solution of the ultimate test, the best interests and welfare of the child. *Ross v. Pick,* 199 Md. 341." See Code, art. 16, § 66 (g).

Mother contends:

> "I. Absent a Statute to the contrary, Maryland Law allows an individual to adopt any name he chooses for any and all non-fraudulent purposes."

> "II. No Maryland Statute repeals the common law right of an individual (infant or adult) to adopt a name of his choosing. No fraudulent purpose has been attributed to the child's actions. Therefore, the child may use the name JENNIFER ANNE WILLIAMS."

It is correct, as we have indicated, that Maryland generally follows the common law rule, so that usually an adult or a minor may adopt any name for a nonfraudulent purpose. Also, it is correct that this may be done without a judicial proceeding, because the statutory provisions concerning change of name do not pre-empt the common law but provide another more formal way to effect a name change. And, further, it is true that no fraudulent purpose has been shown or attributed to the attempt here to change Child's name. We do not agree, however, that the common law right is absolute as to a minor in the face of proper opposition. When a father, as was here the case, opposes the child's change of name by appropriate court action,[19] the common

---

[19]. Mother does not question the propriety of the action seeking an injunction in equity. Other jurisdictions have given relief by way of injunction. This has been done in divorce proceedings, jurisdiction having been retained for the purpose of making appropriate changes in the custody award, and in separate actions for injunctive relief. See cases discussed in Annot., 53 A.L.R.2d 914, § 4 at 920 and § 5 at 923 (1957). The question was squarely presented in Mark v. Kahn, 333 Mass. 517, 131 N.E.2d 758 (1956). The court held that the relief sought was one that a court of equity ought to

law right is tempered, and, as we have seen, the name change becomes a matter of judicial discretion in which the court must look to the substantial welfare of the child. The actual issue for decision is whether the chancellor below properly exercised his discretion in enjoining Mother from allowing and encouraging Child to be known by the surname of the stepfather.

There was no suggestion here of any misconduct on the part of Father or of surrender of the natural ties between him and Child. On the contrary, it was admitted that Father visited Child at least once a week, took great interest in her physical and mental well-being, had a fatherly devotion to her and made the payments for her support faithfully. So, the "most prevalent basis for allowing a change of name", that of a father's misconduct, was utterly lacking. Nor were there present any factors to the effect that Father had abandoned Child. There were no extreme circumstances of any kind shown to justify the name change. Mother said in her Answer that Child wished to be known by the surname of the stepfather "as that name would be less confusing to her schoolmates and friends in the community." No evidence was offered on that point.[20] Reasons for the change of name boils down to a bald assertion in Mother's answer to Father's petition, that Child wished to use the stepfather's surname and that such name "would be less confusing to [Child's]

---

grant in appropriate circumstances. It quoted from Kenyon v. Chicopee, 320 Mass. 528, 534, 70 N.E.2d 241, 244 (1946):

"We believe the true rule to be that equity will protect personal rights by injunction upon the same conditions upon which it will protect property rights by injunction. In general, these conditions are, that unless relief is granted a substantial right of the plaintiff will be impaired to a material degree; that the remedy at law is inadequate; and that injunctive relief can be applied with practical success and without imposing an impossible burden on the court or bringing its processes into disrepute."

See Degerberg v. McCormick, 184 A. 2d 468 (Del. Ch. 1962).

20. We observe that Mother, through her counsel, indicated that Child's surname would remain that of her natural father on official records. During the proceedings of 7 April 1975, Mother's counsel said to the court: "The child is not registered in another name. I have no objection to you using a restraining order on that." Thus, if relief were denied, Child would be known by one name to her schoolmates and friends and by another name on official records.

schoolmates and friends in the community." *West* clearly teaches that, over the father's opposition, this is patently insufficient cause to sever the remaining tenuous bond between a faithful and loving father who has done nothing to besmirch his family name. And even if the indicated wish of Child were really an expression of Child's true volition, and not that of Mother's, it would not be controlling or decisive in the circumstances. We agree with the chancellor that, on the facts before him, it was in the best interests of Child to retain the surname of Father. We hold that the court below properly exercised its discretion in issuing the injunction.

Mother argues that in any event the order issued was "so vague and uncertain as to be incapable of enforcement and therefore void." The order "enjoined and restrained [Mother] from allowing and encouraging [Child] to be known as Jennifer Anne Williams." A similar injunction issued in *Degerberg v. McCormick*, 187 A.2d at 441. In *Mark v. Kahn*, *supra*, the court observed, at 762: "We perceive no insuperable difficulties in enforcing decrees granting injunctive relief in cases of this sort." The order here makes clear what Mother is not to do — she is not to allow or encourage Child to use the name of the stepfather. We do not find the order to be "so vague and uncertain as to be incapable of enforcement".

We do not consider Mother's three remaining contentions. They attempt to invoke the first and fourteenth amendments to the federal constitution with respect to "freedom of speech", "freedom of association", and "right to liberty and privacy". Even if such constitutional rights were involved in this case, issues as to them do not appear to have been presented, and tried and decided below. They are not properly before us. Rule 1085. *Smith v. State*, 16 Md. App. 317, 324 (1972), *cert. den.*, 267 Md. 744 (1973).

*Order of 7 April 1975 affirmed;*
*costs to be paid by appellant.*[21]

---

21. Father asks that fees for his counsel also be assessed against Mother. He cites no authority for his request, and we do not grant it.