JENNIFER E. KLEIN *v.* JEFFERY A. KLEIN

[No. 962, September Term, 1976.]

*Decided May 17, 1977.*

The cause was argued before GILBERT, C. J., and MORTON and MENCHINE, JJ.

*Eileen M. Stein,* with whom was *Kathy Mazzaferri* on the brief, for appellant.

No appearance by appellee.

GILBERT, C. J., delivered the opinion of the Court.

Believing that the Circuit Court for Montgomery County has blotted out her maiden name [1] by refusing to restore it to her at the time of the passage of a decree of divorce *a vinculo matrimonii,* Jennifer E. Klein asks us to "[s]et down . . . [her] name . . ."[2] because "[a] good name is better than riches." [3] We shall do so for the reasons hereafter stated.

The record shows that appellant and appellee entered into a voluntary separation and property settlement agreement on April 10, 1975. The agreement recited the marriage of the parties; the birth of a son, then age 4; various financial arrangements, including support for the appellant and child; the appellant's having custody of the child; property settlement; the "unfortunate and irreconcilable differences" that had arisen between appellant and her then husband; and the separation of the parties on February 19, 1975.

One year and four days later, the husband filed a Bill of Complaint in the circuit court seeking a divorce *a vinculo matrimonii.* The Bill suggested that the appellant was the proper party to have custody of the minor child and that the separation agreement "be incorporated into the Decree of Divorce insofar as this Court has jurisdiction to do so."

Appellant filed an Answer to the Bill in proper person,[4] admitting the allegations thereof and praying affirmatively that she "have her maiden name, Jennifer Evans, restored to her." In due time, the case was referred to a Master in Chancery for hearing on the Bill and Answer. Appellant appeared at the hearing and testified as to her desire to have her maiden name restored in the decree. She stated that she

---

1. *See* I Peter 3:5.
2. John Bunyan, *Pilgrim's Progress, Apology for His Book,* Pt. 1 (1678).
3. Cervantes, *Don Quixote,* Pt. II, bk. II, ch. 33 (1615).
4. From the record, we infer that appellant is a law student.

had "no fraudulent intent," that she would "notify all . . . creditors," and that the purpose was not to avoid debts or obligations incurred in the name of Klein. Appellant further said that she had given "quite a bit of thought" to the fact that she had a minor son whose middle name was "Evans."

The Master's report recommended the divorce *a vinculo matrimonii*, custody of the child to the appellant, the incorporation without merger of the separation agreement into the decree, and the restoration of the appellant's maiden name to her. Counsel for the husband submitted to the court a proposed decree which was in conformity with the Master's recommendations. For reasons not apparent from the record, the judge struck from the decree that portion which restored appellant's maiden name to her.[5]

By 1973 Md. Laws, ch. 811, § 1,[6] the legislature provided that:

> "Whenever the court shall grant a decree of final divorce, the decree *may* include a restoration of the woman's former name." (Emphasis supplied.) [7]

---

5. Although not part of the record, the appellant has reproduced in her brief a letter dated September 1, 1976, from the trial judge to her which reads in pertinent part:

"Dear Ms. Klein:

In response to your recent phone conversation, I cannot permit in your divorce decree that your maiden name be restored to you. This is by virtue of the fact that you have a minor child, Gregory E. Klein, now placed in your custody, and my concern is for the child of the parties.

I suggest you consult counsel of your choice as I am sure he will advise you that you may assume whatever name you wish so long as it is not done with the intention to defraud or deceive. Again, however, in my judgment it would create great confusion to your minor child, now only five years of age."

6. Codified as Md. Ann. Code art. 16, § 32.

7. We observe that 1973 Md. Laws, ch. 811, § 1, introduced as House Bill 844, originally read:

"Whenever the court shall grant a decree of final *divorce, such decree shall include, as the option of the woman, a provision that she shall be restored to her maiden name. No further action need be instituted for the maiden name restoration. Thereafter, by pro se petition to the court, she shall be restored to the use of her maiden name.*"

The use of the verb "may" by the General Assembly is indicative of that body's belief that whether a former name should be restored in the decree at the time of divorce is vested in the sound discretion of the court.[8]

Just what limitations are placed on the court's exercise of that discretion have varied from jurisdiction to jurisdiction, but it is not unbridled. *See, e.g., In re Marriage of Banks,* 42 Cal. App. 3d 631, 117 Cal. Rptr. 37 (1974) (setting a standard of whether the change "may seem right and proper"); *In Re Hauptly,* 262 Ind. 150, 312 N.E.2d 857 (1974) (holding that discretion is abused if the court looks beyond a question of fraudulent intent on the part of the petitioner); *In re Reben,* 342 A. 2d 688 (Me. 1975) (pointing out that at "common law a person could change his name nonjudicially, provided this was not done with fraudulent intent" and holding that failure to change the wife's name to her maiden name under the circumstances was an abuse of discretion); *Egner v. Egner,* 133 N.J. Super. 403, 337 A. 2d 46 (1975) (trial judge had expressed concern for possible future harassment of minor children if mother had prenuptial name restored, but the appellate court held an abuse of discretion noting that the statute permitting the restoration of the prenuptial or maiden name was in the light of the common law and not in derogation of it); *Ogle v. Circuit Court,* 227 N.W.2d 621 (S. Dak. 1975) (burden upon an applicant in divorce proceeding to have maiden name restored is practically non-existent; had the legislature desired the rule to be different when the parties were parents of minor children, they had but to so state); *Elwell v. Elwell,* 132 Vt. 73, 313 A. 2d 394 (1973) (trial court must show "good cause" for denial of maiden name restoration, and the fact that there is a minor child is insufficient reason to deny the request); *In re Strikwerda,* 216 Va. 470, 220 S.E.2d 245 (1975) (discretion of trial judge

---

The italicized portion was deleted by amendment and the words "divorce, the decree may include a restoration of the woman's former name" were added in lieu thereof.

8. At the 1977 Session of the Legislature, House Bill 412, which would have allowed the restoration of a maiden name at the woman's request, passed the House of Delegates but received an unfavorable report by Senate Judicial Proceedings Committee.

abused in denying requested change absent findings of illegal, fraudulent, or immoral purposes); *In re Kruzel,* 67 Wisc. 2d 138, 226 N.W.2d 458 (1975) (ambit of discretion is very narrow as name can be changed unless sufficient cause to the contrary is shown).

At common law, a person could take any name he pleased, so long as it was not done for fraudulent purposes or to interfere with the rights of others. *Hall v. Hall,* 30 Md. App. 214, 351 A. 2d 917 (1976); 74 Colum. L. Rev. 1508 (1974); 44 Cornell L.Q. 144 (1958). That Maryland follows the common law with respect to a name change is no longer open to question. *Hardy v. Hardy,* 269 Md. 412, 306 A. 2d 244 (1973); *Stuart v. Board of Supervisors,* 266 Md. 440, 295 A. 2d 223 (1972); *Romans v. State,* 178 Md. 588, 16 A. 2d 642 (1940); *Hall v. Hall, supra.*

This State's name change statutes, Md. Ann. Code art. 16, §§ 32 and 123, are not to be interpreted as the exclusive manner in which a name may be changed, *Hall v. Hall, supra,* but are in furtherance of and confer an official sanction upon a common law prerogative. We think that an adult or emancipated person may adopt as his or her legal name any name he or she pleases [9] provided that at the time of the adoption of the name it is not illegal, fraudulent, obscene or otherwise offensive, and does not interfere with the rights of others. *See Egner v. Egner, supra.*

In the case at Bar, the uncontradicted testimony is to the effect that the name change desired by appellant was not illegal, was without fraudulent intent, and patently was not obscene or otherwise offensive. The sole reason that the trial judge could have relied upon was that the change would interfere with the rights of the minor son of the parties. *See* note 5, *supra.* While there unquestionably was a time that a child might be harassed if his or her name differed from that of the mother, that day has long since passed. Indeed, the Court of Appeals, in *West v. Wright,* 263 Md. 297, 302,

---

**9.** Judge Learned Hand said on granting the Petition of Samuel Goldfish to change his name to Samuel Goldwyn, "A self-made man may prefer a self-made name."

283 A. 2d 401, 404 (1971), took judicial notice that in this country "nearly 25% of all marriages in a given year involve previously married people" and that "it is not an unusual occurrence to have children and parents living together with different last names." (Footnote omitted.)

We note that when a marriage is annulled the woman resumes her prenuptial name irrespective of whether there have been children born of the voided marriage. Sometimes custody of children is awarded to maternal grandparents, or to the married sister of one of the natural parents, and in those events the child's surname is usually different from that of his guardians.

Today, it is no longer an oddity for a married woman to continue to use her maiden name and not that of her spouse. *Stuart v. Board of Supervisors, supra.* The fact that at some stage in the marriage a child is born does not operate so as to deprive the wife of the use of her prenuptial name.

The trial judge's refusal to restore the appellant's maiden name because of the minor child, while perhaps correct years ago, is, in the light of the times and trend, an abuse of discretion. We hold that it is an abuse of discretion to deny a woman who requests it at the time of divorce the restoration of her prenuptial name, absent illegal, fraudulent, or immoral purposes.

Rather than reverse and remand this matter for further proceedings, we shall, pursuant to Md. Rule 1075 b, amend the decree of divorce entered in the Circuit Court for Montgomery County on August 10, 1976, in the case of Jeffery A. Klein v. Jennifer E. Klein by appending thereto the following:

> "Ordered that Jennifer E. Klein, the Defendant, be, and the same is, hereby restored to her maiden name, Jennifer Evans."

On oral argument we were advised, and the record so reflects, that the appellee, the former husband of appellant, interposed no objection to the appellant's having her maiden name restored. Thus, while the case appears to be one

involving the appellant *vis a vis* the appellee, that is actually not the situation. Appellant recognizes that it would be grossly unfair for the appellee, who is at best a nominal party to this appeal, to be saddled with the costs. Therefore, appellant has voluntarily assumed those costs.

> *Decree amended and as amended affirmed.*
> *Costs to be paid by appellant.*